UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------------x
In re:                                                :     Chapter 11
                                                      :
INNER CITY MEDIA CORPORATION                          :     Case No. 11-[_____] ([___])
                                                      :
                    Alleged Debtors.[1]               :
                                                      :
----------------------------------------------------------------------------------x

### AFFIDAVIT OF JAMES K. NOBLE III PURSUANT
### TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1003(a)

STATE OF CALIFORNIA           )
                              ) ss:
COUNTY OF SAN FRANCISCO       )

James K. Noble III, being duly sworn, deposes and says:

1. I make this affidavit on behalf of Drawbridge Special Opportunities Fund Ltd. ("Drawbridge"), a petitioning creditor in the above-captioned involuntary chapter 11 bankruptcy cases (the "Bankruptcy Cases") filed by Drawbridge and other petitioning creditors against Inner City Media Corporation and its affiliated debtors (collectively, the "Debtors"). I am familiar with the facts set forth herein either through my own personal knowledge or through discussions with other agents at Drawbridge.

2. I am an Authorized Signatory of Drawbridge, and am authorized to make this affidavit and to execute a petition commencing the Bankruptcy Cases on its behalf. Drawbridge has its principal place of business at c/o Drawbridge Special Opportunities Advisors LLC, 1345

---

[1] The Debtors in these involuntary chapter 11 cases are Inner City Media Corporation, ICBC Broadcast Holdings, Inc., Inner-City Broadcasting Corporation of Berkeley, ICBC Broadcast Holdings–CA, Inc., ICBC-NY, L.L.C., ICBC Broadcast Holdings–NY, Inc., Urban Radio, L.L.C., Urban Radio I, L.L.C., Urban Radio II, L.L.C., Urban Radio III, L.L.C., Urban Radio IV, L.L.C., Urban Radio of Mississippi, L.L.C., and Urban Radio of South Carolina, L.L.C.

Noble Affidavit Drawbridge Special
Opportunities Fund Ltd. (ICBC)

Avenue of the Americas, 46th Floor, New York, NY 10105. Drawbridge is a creditor of the Debtors based upon its status as a lender under that certain Credit Agreement dated August 13, 2004 among ICBC Broadcast Holdings, Inc., as borrower, General Electric Capital Corporation as administrative agent,[2] and certain lenders and other loan parties signatory thereto from time to time (as amended, restated, modified, or supplemented from time to time, the "<u>Credit Agreement</u>"; and together with the guarantees, security agreements, pledge agreements and other documents executed and delivered in connection therewith, the "<u>Senior Loan Facility</u>").

### **The Senior Loan Facility**

3. On or about August 13, 2004, the Debtors, the administrative agent and certain lenders entered into the Credit Agreement pursuant to which the lenders extended (or committed to extend) term and revolving loans to the Debtors in the original principal amount of approximately $197,000,000. Due to the periodic capitalization of paid-in-kind interest and the accrual of ordinary and default interest, the current outstanding aggregate amount of the Obligations (as defined in the Credit Agreement) is approximately $254,075,278.94. A copy of the Credit Agreement will be annexed to a declaration in support of a statement contemporaneously filed by the petitioning creditors.

4. Pursuant to the Credit Agreement, the lenders' commitments under the term and revolving loans are evidenced by certain promissory notes. <u>See</u> Credit Agreement § 1.1(a)(ii). The claims of Drawbridge and the other petitioning creditors derive from these notes.

---

[2] On July 1, 2011, General Electric Capital Corporation resigned as administrative agent and was succeeded by Cortland Capital Market Services LLC.

5. The Obligations are secured by first priority liens in substantially all of the Debtors' assets, including, but not limited to, real property, equipment, cash or cash equivalents on deposit in certain of the Debtors' deposit accounts, intellectual property, and certain pledged equity interests.

6. The Obligations are guaranteed by Inner City Media Corporation and several subsidiaries of ICBC Broadcast Holdings, Inc., the borrower under the Credit Agreement. Each of these guarantors is also an involuntary Debtor. Copies of these guarantees will be annexed to a declaration in support of a statement contemporaneously filed by the petitioning creditors.

## The Assignments

7. By virtue of the execution of several Assignment and Assumption Agreements Drawbridge received an unconditional transfer and assignment of Loans (as defined in the Credit Agreement) (the "Assigned Claims"). Redacted copies of the assignment documentation are annexed hereto as **Exhibit A**.[3]

8. The Assigned Claims were not assigned to Drawbridge for the purposes of commencing the Bankruptcy Cases.

9. As of the date hereof, the Debtors are indebted to Drawbridge in the amount of not less than $7,251,431.58. This amount exceeds the value of all collateral securing such Obligations by not less than $14,425.00.

---

[3] Subsequent to the original assignment, a portion of the loans were transferred internally from the original Fortress assignee to the current holder.

10. It is understood and acknowledged that the undersigned is executing this certificate not in an individual capacity but solely as an authorized signatory and is not personally liable as to any of the loans described in this affidavit.

[The remainder of this page has been intentionally left blank.]

Dated: August 19, 2011
   San Francisco, California

Sworn to and subscribed before me
This 19th day of August, 2011

_____
Notary Public

KATHERINE ANNE ALPERT
COMM. #1856097
Notary Public - California
Los Angeles County
My Comm. Expires Jun. 28, 2013

Noble Affidavit Drawbridge Special
Opportunities Fund Ltd. (ICBC)
-5-

# EXHIBIT A

# ASSIGNMENT AGREEMENT

This Assignment Agreement (this "Agreement") is made as of ▓▓▓▓▓ by and between GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation ("Assignor Lender") and FORTRESS CREDIT OPPORTUNITIES I LP, a Delaware limited partnership ("Assignee Lender") and acknowledged and consented to by GENERAL ELECTRIC CAPITAL CORPORATION, as agent ("Agent"). All capitalized terms used in this Agreement and not otherwise defined herein will have the respective meanings set forth in the Credit Agreement as hereinafter defined.

## RECITALS:

WHEREAS, ICBC BROADCAST HOLDINGS, INC., a Delaware corporation ("Borrower"), Agent, Assignor Lender and other Persons signatory thereto as Lenders have entered into that certain Credit Agreement dated as of August 16, 2004 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") pursuant to which Assignor Lender has agreed to make certain Loans to, and incur certain Letter of Credit Obligations for, Borrower;

WHEREAS, Assignor Lender desires to assign to Assignee Lender a portion of its interest in the Loans (as described below), the Letter of Credit Obligations and the Collateral and to delegate to Assignee Lender a portion of its Commitments and other duties with respect to such Loans, Letter of Credit Obligations and Collateral;

WHEREAS, Assignee Lender desires to become a Lender under the Credit Agreement and to accept such assignment and delegation from Assignor Lender; and

WHEREAS, Assignee Lender desires to appoint Agent to serve as agent for Assignee Lender under the Credit Agreement;

NOW, THEREFORE, in consideration of the premises and the agreements, provisions, and covenants herein contained, Assignor Lender and Assignee Lender agree as follows:

1. ASSIGNMENT, DELEGATION, AND ACCEPTANCE

    1.1 Assignment. Assignor Lender hereby transfers and assigns to Assignee Lender, without recourse and without representations or warranties of any kind (except as set forth in Section 3.2), such percentage of Assignor Lender's right, title, and interest in the Term Loan, Loan Documents and Collateral as will result in Assignee Lender having as of the Effective Date (as hereinafter defined) a Pro Rata Share thereof, as follows:

| Assignee Lender's Loans | Principal Amount | Pro Rata Share |
|---|---|---|
| Term Loan | $18,000,000 | 9.6% |

1.2 <u>Delegation</u>. Assignor Lender hereby irrevocably assigns and delegates to Assignee Lender a portion of its Commitments and its other duties and obligations as a Lender under the Loan Documents equivalent to 16% of Assignor Lender's Term Loan Commitment (such percentage representing a commitment of $18,000,000).

1.3 <u>Acceptance by Assignee Lender</u>. By its execution of this Agreement, Assignee Lender irrevocably purchases, assumes and accepts such assignment and delegation and agrees to be a Lender with respect to the delegated interest under the Loan Documents and to be bound by the terms and conditions thereof. By its execution of this Agreement, Assignor Lender agrees, to the extent provided herein, to relinquish its rights and be released from its obligations and duties under the Credit Agreement.

1.4 <u>Effective Date</u>. Such assignment and delegation by Assignor Lender and acceptance by Assignee Lender will be effective and Assignee Lender will become a Lender under the Loan Documents as of the date of this Agreement ("<u>Effective Date</u>") and upon payment of the Assigned Amount and the Assignment Fee (as each term is defined below). Interest and Fees accrued prior to the Effective Date are for the account of Assignor Lender, and Interest and Fees accrued from and after the Effective Date are for the account of Assignee Lender.

2. INITIAL PAYMENT AND DELIVERY OF NOTES

2.1 <u>Payment of the Assigned Amount</u>. Assignee Lender will pay to Assignor Lender, in immediately available funds, not later than 11:00 a.m. (New York time) on the Effective Date, an amount equal to its Pro Rata Share of the then outstanding principal amount of the Loans as set forth above in <u>Section 1.1</u> together with accrued interest, fees and other amounts as set forth on Schedule 2.1 (the "<u>Assigned Amount</u>").

2.2 <u>Payment of Assignment Fee</u>. Assignor Lender will pay to Agent, for its own account in immediately available funds, not later than 11:00 a.m. (New York time) on the Effective Date, the assignment fee in the amount of $3,500 (the "<u>Assignment Fee</u>") as required pursuant to Section 9.1(a) of the Credit Agreement.

2.3 <u>Execution and Delivery of Notes</u>. Following payment of the Assigned Amount and the Assignment Fee, Assignor Lender will deliver to Agent the Note previously delivered to Assignor Lender for redelivery to Borrower and Agent will obtain from Borrower for delivery to Assignor Lender and Assignee Lender, new executed Notes evidencing Assignee Lender's and Assignor Lender's respective Pro Rata Shares in the Loans after giving effect to the assignment described in <u>Section 1</u>. Each new Note will be issued in the aggregate maximum principal amount of the applicable Commitment of the Lender to whom such Note is issued.

3. REPRESENTATIONS, WARRANTIES AND COVENANTS

3.1     Assignee Lender's Representations, Warranties and Covenants. Assignee Lender hereby represents, warrants, and covenants the following to Assignor Lender and Agent:

(a)     This Agreement is a legal, valid, and binding agreement of Assignee Lender, enforceable according to its terms;

(b)     The execution and performance by Assignee Lender of its duties and obligations under this Agreement and the Loan Documents will not require any registration with, notice to, or consent or approval by any Governmental Authority;

(c)     Assignee Lender is familiar with transactions of the kind and scope reflected in the Loan Documents and in this Agreement;

(d)     Assignee Lender has made its own independent investigation and appraisal of the financial condition and affairs of each Credit Party, has conducted its own evaluation of the Loans and Letter of Credit Obligations, the Loan Documents and each Credit Party's creditworthiness, has made its decision to become a Lender to Borrower under the Credit Agreement independently and without reliance upon Assignor Lender or Agent, and will continue to do so;

(e)     Assignee Lender is entering into this Agreement in the ordinary course of its business, and is acquiring its interest in the Loans and Letter of Credit Obligations for its own account and not with a view to or for sale in connection with any subsequent distribution; provided, however, that at all times the distribution of Assignee Lender's property shall, subject to the terms of the Credit Agreement, be and remain within its control;

(f)     No future assignment or participation granted by Assignee Lender pursuant to Section 9.1 of the Credit Agreement will require Assignor Lender, Agent, or Borrower to file any registration statement with the Securities and Exchange Commission or to apply to qualify under the blue sky laws of any state;

(g)     Assignee Lender has no loans to, written or oral agreements with, or equity or other ownership interest in any Credit Party;

(h)     Assignee Lender will not enter into any written or oral agreement with, or acquire any equity or other ownership interest in, any Credit Party without the prior written consent of Agent; and

(i)     As of the Effective Date, Assignee Lender (i) is entitled to receive payments of principal and interest in respect of the Obligations without deduction for or on account of any taxes imposed by the United States of America or any political subdivision thereof, (ii) is not subject to capital adequacy or similar requirements under Section 1.16(a) of the Credit Agreement, (iii) does not require the payment of any increased costs under Section 1.16(b) of the Credit Agreement, and (iv) is not unable to fund LIBOR Loans under Section 1.16(c) of the Credit Agreement, and Assignee Lender will indemnify Agent from and against all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, or expenses that result

from Assignee Lender's failure to fulfill its obligations under the terms of Section 1.15(c) of the Credit Agreement or from any other inaccuracy in the foregoing.

3.2 <u>Assignor Lender's Representations, Warranties and Covenants</u>. Assignor Lender hereby represents, warrants and covenants the following to Assignee Lender:

(a) Assignor Lender is the legal and beneficial owner of the Assigned Amount;

(b) This Agreement is a legal, valid and binding agreement of Assignor Lender, enforceable according to its terms;

(c) The execution and performance by Assignor Lender of its duties and obligations under this Agreement and the Loan Documents will not require any registration with, notice to or consent or approval by any Governmental Authority;

(d) Assignor Lender has full power and authority, and has taken all action necessary to execute and deliver this Agreement and to fulfill the obligations hereunder and to consummate the transactions contemplated hereby;

(e) Assignor Lender is the legal and beneficial owner of the interests being assigned hereby, free and clear of any adverse claim, lien, encumbrance, security interest, restriction on transfer, purchase option, call or similar right of a third party; and

(f) This Assignment by Assignor Lender to Assignee Lender complies, in all material respects, with the terms of the Loan Documents.

4. LIMITATIONS OF LIABILITY

Neither Assignor Lender (except as provided in <u>Section 3.2</u>) nor Agent makes any representations or warranties of any kind, nor assumes any responsibility or liability whatsoever, with regard to (a) the Loan Documents or any other document or instrument furnished pursuant thereto or the Loans, Letter of Credit Obligations or other Obligations, (b) the creation, validity, genuineness, enforceability, sufficiency, value or collectibility of any of them, (c) the amount, value or existence of the Collateral, (d) the perfection or priority of any Lien upon the Collateral, or (e) the financial condition of any Credit Party or other obligor or the performance or observance by any Credit Party of its obligations under any of the Loan Documents. Neither Assignor Lender nor Agent has or will have any duty, either initially or on a continuing basis, to make any investigation, evaluation, appraisal of, or any responsibility or liability with respect to the accuracy or completeness of, any information provided to Assignee Lender which has been provided to Assignor Lender or Agent by any Credit Party. Nothing in this Agreement or in the Loan Documents shall impose upon the Assignor Lender or Agent any fiduciary relationship in respect of the Assignee Lender.

5. FAILURE TO ENFORCE

No failure or delay on the part of Agent or Assignor Lender in the exercise of any power, right, or privilege hereunder or under any Loan Document will impair such power, right, or privilege or be construed to be a waiver of any default or acquiescence therein. No single or partial exercise of any such power, right, or privilege will preclude further exercise thereof or of any other right, power, or privilege. All rights and remedies existing under this Agreement are cumulative with, and not exclusive of, any rights or remedies otherwise available.

6. NOTICES

Unless otherwise specifically provided herein, any notice or other communication required or permitted to be given will be in writing and addressed to the respective party as set forth below its signature hereunder, or to such other address as the party may designate in writing to the other.

7. AMENDMENTS AND WAIVERS

No amendment, modification, termination, or waiver of any provision of this Agreement will be effective without the written concurrence of Assignor Lender, Agent and Assignee Lender.

8. SEVERABILITY

Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law. In the event any provision of this Agreement is or is held to be invalid, illegal, or unenforceable under applicable law, such provision will be ineffective only to the extent of such invalidity, illegality, or unenforceability, without invalidating the remainder of such provision or the remaining provisions of the Agreement. In addition, in the event any provision of or obligation under this Agreement is or is held to be invalid, illegal, or unenforceable in any jurisdiction, the validity, legality, and enforceability of the remaining provisions or obligations in any other jurisdictions will not in any way be affected or impaired thereby.

9. SECTION TITLES

Section and Subsection titles in this Agreement are included for convenience of reference only, do not constitute a part of this Agreement for any other purpose, and have no substantive effect.

10. SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

11. APPLICABLE LAW

THIS AGREEMENT WILL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN THAT STATE.

12. COUNTERPARTS

This Agreement and any amendments, waivers, consents, or supplements may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which, when so executed and delivered, will be deemed an original and all of which shall together constitute one and the same instrument.

[remainder of this page intentionally left blank]

IN WITNESS WHEREOF, this Agreement has been duly executed as of the date first written above.

| ASSIGNEE LENDER: | ASSIGNOR LENDER: |
|---|---|

FORTRESS CREDIT OPPORTUNITIES I LP

By: FORTRESS CREDIT OPPORTUNITIES I GP LLC, its General Partner

GENERAL ELECTRIC CAPITAL CORPORATION

By: _C. ꝗ̣ꝗ̣ꝗ̣_
Its Duly Authorized Signatory

By: _____
Name: _____
Title: _____

Notice Address:

Fortress Credit Opportunities I GP LLC
1251 Avenue of the Americas, 16th Floor
New York, New York 10020
Attention: 
Telephone:
Telecopy:

Notice Address:

General Electric Capital Corporation
2325 Lakeview Parkway, Suite 700
Alpharetta, GA 30004
Attention: Corporate Counsel-Commercial Finance
Telecopier No.: ▉▉▉▉▉▉
Telephone No.: ▉▉▉▉▉▉

ACKNOWLEDGED AND CONSENTED TO:

GENERAL ELECTRIC CAPITAL CORPORATION, as Agent

By: _C. ꝗ̣ꝗ̣ꝗ̣_
Its Duly Authorized Signatory

IN WITNESS WHEREOF, this Agreement has been duly executed as of the date first written above.

| | |
|---|---|
| **ASSIGNEE LENDER:** | **ASSIGNOR LENDER:** |
| FORTRESS CREDIT OPPORTUNITIES I LP | GENERAL ELECTRIC CAPITAL CORPORATION |
| By: FORTRESS CREDIT OPPORTUNITIES I GP LLC, its General Partner | |

By: /s/ illegible
Name: 
Title: **CHIEF OPERATING OFFICER**

By: _____
Its Duly Authorized Signatory

Notice Address:

1251 Avenue of the Americas, 16th Floor
New York, New York 10020
Attention: ███
Telephone: ███
Telecopy: ███

Notice Address:

General Electric Capital Corporation
2325 Lakeview Parkway, Suite 700
Alpharetta, GA 30004
Attention: Corporate Counsel-Commercial Finance
Telecopier No.: ███
Telephone No.: ███

ACKNOWLEDGED AND CONSENTED TO:

GENERAL ELECTRIC CAPITAL
CORPORATION, as Agent

By:_____
Its Duly Authorized Signatory

SCHEDULE 2.1

Assignor Lender's Loans

Principal Amount

| | |
|---|---|
| Revolving Loan | $ 0.00 |
| Term Loan | $ 18,000,000.00 |
| Incremental Term Loan | $ 0.00 |
| Subtotal | $ 18,000,000.00 |
| Accrued Interest | $ 0.00 |
| Fees | $ ▓▓▓▓ |
| Other + or -$ | $ 0.00 |
| Total | $ ▓▓▓▓ |

All determined as of the Effective Date.