**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INNER CITY MEDIA CORPORATION, *et al.*, | ) Case No. 11-13967 (SCC) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO USE
### CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION
### TO AGENT AND SENIOR LENDERS, AND (III) GRANTING RELATED RELIEF

Upon the motion, dated September 8, 2011 (the "Motion"),[2] of Inner City Media

Corporation and certain of its affiliates, each as a debtor and debtor in possession (the "Debtors")

in the above-captioned cases (the "Cases"), pursuant to sections 105, 361, 362, 363(c)(2), 363(e),

and 507 of the Bankruptcy Code, Bankruptcy Rules 4001 and 9014, and Local Rule 4001-2 for

entry of interim and final orders (i) authorizing the Debtors to use cash collateral, (ii) granting

adequate protection to the Agent and the Senior Lenders (as defined below), and (iii) granting

certain related relief, all as more fully set forth in the Motion; and the Interim Hearing having

been held by this Court on September 9, 2011; and upon the record of the Hearing and all of the

proceedings had before the Court; and the Court having found and determined that the relief

requested in the Motion is in the best interests of the Debtors, their estates and creditors, and all

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: Inner City Media Corporation (5309), ICBC Broadcast Holdings, Inc. (2429), Inner City Broadcasting Corporation of Berkeley (5990), ICBC Broadcast Holdings – CA, Inc. (5311), ICBC-NY, L.L.C. (8879), Urban Radio, L.L.C. (6747), Urban Radio I, L.L.C. (2649), Urban Radio II, L.L.C. (2701), Urban Radio III, L.L.C. (2747), Urban Radio IV, L.L.C. (3662), Urban Radio of Mississippi, L.L.C. (1154), and Urban Radio of South Carolina, L.L.C. (5231). The principal corporate location of the Debtors is 3 Park Avenue, 40th Floor, New York, NY 10016. The service address for all of the Debtors is 3 Park Avenue, 40th Floor, New York, NY 10016.

[2] Except as otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

parties in interest, and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**[3]

A.     On August 19, 2011, Yucaipa Corporate Initiatives Fund II, L.P., Yucaipa Corporate Initiatives (Parallel) Fund II, L.P., CF ICBC LLC, Fortress Credit Funding I L.P., and Drawbridge Special Opportunities Fund Ltd., which constitute the lenders (collectively, in such capacity, the "Senior Lenders") under the Senior Secured Credit Facility (as defined below), filed involuntary chapter 11 petitions against the Debtors.

B.     Upon the consent of the Debtors, on September 8, 2011, the Court entered orders for relief, commencing the Cases (the "Relief Date").

C.     The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On the Relief Date, the Debtors filed a motion requesting the joint administration of the Cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b).  No statutory committee of unsecured creditors has yet been appointed in these Cases.

D.     This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth in this Interim Order constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.    Pursuant to Bankruptcy Rule 4001(b)(2), the Interim Hearing was held by this Court on September 9, 2011.

F.    Notice of the Motion, the relief requested by the Motion, and the Interim Hearing was served by the Debtors on (a) the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d) (the "Top 30 Creditors"); (c) counsel to the Senior Lenders; (d) counsel to the Agent; (e) counsel to Inner City Broadcasting Corporation; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; and (h) the Federal Communications Commission.  A copy of the Motion is also available on the website of the Debtors' notice and claims agent, GCG, Inc., at www.gcginc.com/cases/ICBC.   The foregoing notice was, in the Debtors' belief, the best available under the circumstances.

G.    Subject to paragraph 14 of this Interim Order, the Debtors acknowledge, admit, stipulate, confirm, and agree that:

1.    Pursuant to the Credit Agreement among the Debtors, General Electric Capital Corporation,[4] as administrative agent, and the lenders signatory to the Credit Agreement from time to time, dated as of August 13, 2004 (as amended as of each of September 27, 2004, November 11, 2004, May 5, 2005, October 6, 2006, and June 22, 2007, and as further amended, restated, modified, or supplemented from time to time, the "Senior Secured Credit Facility"),[5] and certain related documents executed in connection

---

[4] On July 1, 2011, General Electric Capital Corporation resigned as administrative agent under the Senior Secured Credit Facility and was succeeded by Cortland Capital Market Services LLC (the "Agent").

[5] Except as otherwise noted, capitalized terms used but not defined in this statement shall have the meanings set forth in the Senior Secured Credit Facility.

with the Senior Secured Credit Facility, including, without limitation, the Collateral Documents (as defined in the Senior Secured Credit Facility, the "<u>Collateral Documents</u>"), control agreements, guaranties, mortgages, Uniform Commercial Code financing statements, and all other related agreements, documents, and instruments (as the same may have been amended, restated, modified, or supplemented from time to time, the "<u>Prepetition Loan Documents</u>"), the Senior Lenders (or their predecessors in interest) made certain loans, advances, and other financial accommodations for the account of the Debtors.

2.     As of the Relief Date, the Debtors were indebted to the Senior Lenders for the loans, advances, and other financial accommodations made by the Senior Lenders pursuant to, and in accordance with, the Prepetition Loan Documents in the aggregate principal amount of approximately $228 million, plus accrued and unpaid interest and fees.

3.     For purposes of this Interim Order, the term "<u>Prepetition Indebtedness</u>" shall mean, without duplication, any and all amounts owing or outstanding under the Prepetition Loan Documents, including, without limitation, all Obligations (as defined in the Senior Secured Credit Facility), interest, fees, and other costs, expenses, and charges owing in respect of such amounts, including, without limitation, any attorney or other professional fees and expenses, and other fees and expenses that are chargeable or reimbursable pursuant to the Prepetition Loan Documents, and any and all obligations and liabilities, contingent or otherwise, owed in respect of the Obligations.

4.     To secure the Prepetition Indebtedness, pursuant to the Collateral Documents executed in connection with the Senior Secured Credit Facility, including,

without limitation, the Security Agreement, dated as of August 13, 2004, by and between the Debtors and the Agent (as amended, restated, modified, or supplemented from time to time, the "Security Agreement"), the Trademark Security Agreement, dated as of August 13, 2004, by and between Inner City Broadcasting Corporation ("ICBC"), Inner-City Broadcasting Corporation of Berkeley, and ICBC Broadcast Holdings, Inc. (collectively, the "IP Grantors") and the Agent (as amended, restated, modified, or supplemented from time to time, the "Trademark Security Agreement"), control agreements, guaranties, mortgages, Uniform Commercial Code financing statements, and all other related agreements, documents, and instruments, the Debtors and the IP Grantors, as applicable, granted to the Agent for the benefit of the Senior Lenders valid, enforceable, and perfected security interests in, and continuing first priority liens on (collectively, the "Prepetition Liens"), substantially all of the assets identified in or that are the subject of such Collateral Documents, including, but not limited to, real property, equipment, cash or cash equivalents on deposit in certain deposit accounts, patents, copyrights, trademarks, or other intellectual property (including, without limitation, all of the trademarks identified on Schedule IV attached to the Security Agreement and on Schedule I attached to the Trademark Security Agreement), and certain pledged equity interests (collectively, the "Collateral"). For the avoidance of doubt, the term "Collateral" shall include (a) collateral in or upon which a Prepetition Lien or other security interest has been granted in favor or for the benefit of the Agent, for the benefit of the Senior Lenders in connection with, pursuant to, or under the Senior Secured Credit Facility and the Collateral Documents and (b) any Collateral provided under any Prepetition Loan Document, including that described in this subparagraph 4, that existed

as of the Relief Date and at any time prior to the Relief Date, and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits.

5.      The Prepetition Loan Documents are legal, valid, and binding agreements and obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and the Debtors represent that they have been and are using the Collateral in connection with their control and operation of the Stations and the provision of radio broadcasting services related thereto, which control and operation of the Stations, provision of such services, and use of all such Collateral have been free of interference and control by ICBC and any other non-Debtor affiliate.

6.      The Prepetition Liens are (a) valid, binding, enforceable (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), and perfected first priority security interests and liens, subject only to the Permitted Encumbrances (as defined in the Senior Secured Credit Facility), but only to the extent such Permitted Encumbrances existed as of the Relief Date and are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Relief Date (or perfected after the Relief Date to the extent permitted by section 546(b) of the Bankruptcy Code) (the "Permitted Encumbrances") and (b) not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.  The Agent (on behalf, and for the benefit, of the Senior Lenders) holds valid, binding, enforceable (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), and perfected first priority security interests and Prepetition Liens in and on the Collateral by taking

possession of, or obtaining control over, certain assets and by the filing of Uniform Commercial Code financing statements, mortgages, and other required documents against the Debtors and the IP Grantors and such Collateral with the proper federal, state, and county offices for the perfection of such security interests and liens.

7.    (a) The Prepetition Indebtedness constitutes a legal, valid, and binding obligation of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), (b) no objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Indebtedness or the Prepetition Liens exists, and none of the Debtors or any IP Grantor, either collectively or individually, shall assert any claim, counterclaim, setoff, or defense of any kind, nature or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Indebtedness, the Prepetition Liens or any of the Collateral, and (c) the Prepetition Indebtedness and any amounts previously paid to the Agent or any Senior Lender on account of, or with respect to, the Prepetition Indebtedness are not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

8.    Neither the Agent nor the Senior Lenders shall be required to file proofs of claims in the Cases with respect the Prepetition Indebtedness, and the Debtors' acknowledgments set forth in this paragraph G shall be deemed a timely filed proof of claim on behalf of the Agent and the Senior Lenders on account of the Prepetition Indebtedness and any order entered by the Court in relation to the establishment of a bar date in any of the Cases shall so provide.

9.      Notwithstanding anything in this paragraph G to the contrary, none of the Debtors' acknowledgements, admissions, stipulations, confirmations and agreements shall be binding on ICBC and, nothing in this Interim Order shall limit or affect ICBC's position that it has not pledged any trademarks to the Senior Lenders or ICBC's right to challenge the Senior Lenders' position that they have a lien on such trademarks; provided, that the Senior Lenders reserve all rights under this Interim Order and otherwise in the event of any such challenge by ICBC.

H.      Good cause has been shown for the immediate entry and effectiveness of this Interim Order pursuant to Bankruptcy Rule 4001(b).

I.      An immediate and critical need exists for the Debtors to use "cash collateral" (as defined by section 363(a) of the Bankruptcy Code) and including any and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds of the Collateral (the "Cash Collateral").  The Debtors' immediate use of the Cash Collateral is necessary in order to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the value of their assets and to conduct the orderly administration of the Cases for the benefit of the Debtors' estates and all parties in interest.

J.      The Debtors have requested that, pursuant to the terms of this Interim Order, any successive interim order regarding the Debtors' use of the Cash Collateral entered by the Court with the consent of the Agent and the Senior Lenders (each, a "Successive Interim Order"), the Final Order, and all other agreements, documents, and instruments delivered in connection with the Interim Order, any Successive Interim Order, and the Final Order, including, without limitation, the Approved Budget (as defined below, and together with the Interim Order, any Successive Interim Order, the Final Order, and all of the foregoing agreements, documents,

and instruments, collectively, the "Cash Collateral Documents"), the Agent and the Senior Lenders consent to the Debtors' use of the Cash Collateral, solely in accordance with the terms of the Cash Collateral Documents.

K.     The Agent and the Senior Lenders are prepared to consent to the Debtors' use of the Cash Collateral only if the Debtors agree, and the Court orders in this Interim Order, that the Debtors shall provide the Adequate Protection (as defined below).

L.     The Adequate Protection is (i) reasonable and sufficient to protect the interests of the Agent and the Senior Lenders, (ii) consistent with and authorized by the Bankruptcy Code, and (iii) necessary to obtain the consent of the Agent and the Senior Lenders. The Cash Collateral Documents have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors and the Senior Lenders. The terms of the Cash Collateral Documents, including, without limitation, the Adequate Protection, are fair and reasonable, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

M.     The Debtors have prepared and delivered to the Agent and the Senior Lenders a 13-week budget, which is attached to this Interim Order as Exhibit 1 (in each case, subject to the Permitted Variance (as defined below), the "Approved Budget"). The Approved Budget has been thoroughly reviewed by the Debtors, their management, and the Senior Lenders, and the Debtors represent that the Approved Budget is achievable in accordance with the terms of the Cash Collateral Documents, and will allow the Debtors to operate at all times during the Approved Budget Period (as defined below) without the accrual of unpaid administrative expenses. The Agent and the Senior Lenders are relying upon the Debtors' representations above regarding the Debtors' ability to comply with the Approved Budget during the Approved

Budget Period in determining to consent to the Debtors' use of the Cash Collateral during the Approved Budget Period, as provided for in the Cash Collateral Documents.

N.     The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2).  The ability of the Debtors to continue their businesses and reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtors' use of the Cash Collateral.  The Debtors' estates will suffer immediate and irreparable harm if the requested use of the Cash Collateral is not granted on an interim basis.  The Debtors' use of the Cash Collateral in accordance with the Cash Collateral Documents is necessary, essential, and appropriate for the continued operation of the Debtors' businesses, the management and preservation of their assets and properties, and the avoidance of irreparable harm to the Debtors' estates.  Therefore, entry of this Interim Order in the best interests of the Debtors, their estates and creditors, and all parties in interest.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.     **Motion Granted.**  The Motion is granted on the terms and conditions set forth in this Interim Order.  Any objections or responses to the relief requested in the Motion that have not been previously withdrawn, waived, or settled, and all reservations of rights included in such objections and responses, are hereby overruled on the merits and denied with prejudice or, to the extent applicable, deferred until the hearing on any Successive Interim Order or the Final Order (whichever is earlier).  The rights of all parties to object to entry of any Successive Interim Order and the Final Order are reserved.

2.     **Use of Cash Collateral.**  The Debtors are authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use the Cash Collateral through and including the date that is thirty (30) days from entry of the Interim Order; _provided_, that the Agent and the Senior

Lenders are granted the Adequate Protection (as defined below); <u>provided</u>, <u>further</u>, for the avoidance of doubt, notwithstanding anything herein to the contrary, the Debtors' authorization to use Cash Collateral pursuant to this Interim Order, and the consent of the Senior Lenders with respect thereto, extends solely through the date that is thirty (30) days from entry of this Interim Order (the "<u>Approved Budget Period</u>"), and the Debtors and the Senior Lenders reserve all rights with respect to any proposed use of Cash Collateral beyond such Approved Budget Period. The Debtors shall use the Cash Collateral solely in accordance with this Interim Order, the Approved Budget, and the other Cash Collateral Documents, and the Cash Collateral shall be used exclusively to fund working capital and general corporate purposes of the Debtors during the Approved Budget period, and the costs, fees, and expenses incurred in connection with the administration and prosecution of the Cases. The Debtors' right to use Cash Collateral under this Interim Order shall terminate upon the occurrence of an Event of Default (as defined below), subject only to the Remedies Notice Period. The Agent and the Senior Lenders have consented to the Debtors' use of the Cash Collateral, subject to the terms of this Interim Order, the Approved Budget, and the other Cash Collateral Documents.

3. **<u>Adequate Protection</u>.** As adequate protection for the Debtors' use of the Cash Collateral, the Agent and the Senior Lenders are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Collateral in an amount equal to the aggregate diminution in the value of their interests in the Collateral, including, without limitation, any such diminution resulting from the Debtors' use of the Cash Collateral, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code or otherwise (collectively, the "<u>Adequate Protection Obligations</u>"). The Agent

and the Senior Lenders are hereby granted the following forms of adequate protection (collectively, the "Adequate Protection"):

(a)     Adequate Protection Liens.  Effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors or any other IP Grantor of security agreements, pledge agreements, financing statements, control agreements, or other agreements or instruments, valid and perfected additional and replacement security interests in and liens on all of the Collateral (collectively, the "Adequate Protection Liens"), which shall be subject and subordinate only to (i) the Permitted Encumbrances and (ii) the Carve-Out, and shall include, subject to entry of any Successive Interim Order or the Final Order (whichever is earlier), a perfected security interest in and lien upon any causes of action arising under sections 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any proceeds of such causes of action (collectively, the "Avoidance Actions").

(b)     Superpriority Claims.   The Adequate Protection Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all

proceeds thereof (collectively, the "Adequate Protection Claims"), subject only to the payment of the Carve-Out.

(c)    Interest Payments.  In the event that the Senior Lenders consent to the Debtors' use of the Cash Collateral following the expiration of this Interim Order, the Senior Lenders reserve the right to request as a form of adequate protection periodic cash payments in an amount equal to the amount of interest otherwise due and payable under the Senior Secured Credit Facility, and the Debtors reserve the right to oppose any such request by the Senior Lenders.

(d)    Fees and Expenses. The Debtors shall pay all reasonable fees and out-of-pocket costs and expenses of the Agent (including, but not limited to, reasonable fees and out-of-pocket costs and expenses of counsel to the Agent) incurred after August 19, 2011 up to an aggregate amount of $50,000 per month (the "Agent Fees and Expenses") promptly upon receipt of invoices for such fees, costs, and expenses (with copies of such invoices provided to the U.S. Trustee and any statutory committee of unsecured creditors appointed in the Cases (the "Committee")) (subparagraphs (c) and (d) of this paragraph 3, the "Adequate Protection Payments"); provided, that if the Agent Fees and Expenses are less than $50,000 in any monthly period, the unused amount may be carried over to future Agent Fees and Expenses periods.  No such fees, costs, and expenses payable pursuant this subparagraph d shall be subject to separate approval by the Court (but the Court shall resolve any dispute as to the reasonableness of any such fees, costs, and expenses), and no recipient of any such payment shall be required to file any interim or final fee applications with respect to the Agent Fees and Expenses.  In the event the Court determines by final, non-appealable order that any Adequate Protection Payment was

improper as a result of application of section 506(b) of the Bankruptcy Code, such Adequate Protection Payments shall be subject to total or partial application to principal (as the Court may determine).

(e)     Right to Credit Bid.  Subject to entry of any Successive Interim Order or the Final Order (whichever is earlier), the Agent and each of the Senior Lenders have the right to credit bid the Prepetition Indebtedness (pursuant to section 363(k) of the Bankruptcy Code, section 1129(b)(2)(B) of the Bankruptcy Code, or otherwise in accordance with applicable law), in whole or in part, in connection with any sale or disposition of any assets of the Debtors, whether under a chapter 11 plan of reorganization or otherwise, and the Debtors shall not oppose any such credit bid.

(f)     Sale Documentation.  Any motions, proposed orders, bidding or sale procedures, asset purchase agreements, term sheets, or other documentation or pleadings relating to any sale of any of the Debtors' assets shall be in form and substance acceptable to the Senior Lenders.  Any bidding procedures proposed and/or approved in connection with any sale of any of the Debtors' assets shall require other bidders to submit bids to the Senior Lenders, with a copy to the Agent, contemporaneously with submission to the Debtors, and the Senior Lenders shall be entitled to participate in the review and evaluation of any such bids by the Debtors; provided, that neither the Agent nor the Senior Lenders shall be entitled to receive the bids of other bidders or participate in the review and evaluation of any such bids if the Senior Lenders deliver written notice to the Debtors, counsel to the Debtors, counsel to any Committee, and the U.S. Trustee stating expressly that the Senior Lenders intend to submit a bid for the Debtors' assets, which notice must be delivered no later than five (5) business days prior to the expiration

of any deadline for submission of bids if the Senior Lenders intend to submit a bid for the Debtors' assets.

(g)     Plan Documentation.  Any chapter 11 plan proposed by any Debtor that does not provide for the payment of the Prepetition Indebtedness in full, in cash, and any disclosure statement, proposed orders, or other documentation or pleadings related to any such chapter 11 plan, shall be in form and substance acceptable to the Senior Lenders.

(h)     Conditions Precedent to Entry of Interim Order.  Prior to entry of the Interim Order, the Debtors shall have delivered to the Senior Lenders, in each case, in form and substance acceptable to the Senior Lenders, (i) a 13-week cash flow forecast, which projects the weekly cash inflows and outflows for the 13 calendar weeks following entry of the Interim Order, (ii) a current corporate organizational chart for the Debtors and any and all non-Debtor affiliates (the "Organizational Chart"), (iii) information regarding the Debtors' current cash management system, (iv) an accounting of all payments and other transfers of value made by any Debtor, ICBC, and any other non-Debtor affiliate to Akin Gump Strauss Hauer & Feld and Rothschild Inc., from January 2011 through the Relief Date, and, together with such accounting, a summary of the services provided by the foregoing professionals to or for the benefit of any Debtor, ICBC, and any other non-Debtor affiliate from January 2011 through the Relief Date, and (v) a schedule setting forth the identity of each of the members of the boards of directors of ICBC, Inner City Media Corporation ("ICMC"), and ICBC Broadcast Holdings, Inc. ("Holdings").

(i)     Milestones.  The Debtors shall take the actions identified below by the following dates: (i) within thirty (30) days of the date of entry of this Interim Order (the

"Process Start Date"), the Debtors shall have filed with the Court a proposed chapter 11 plan (the "Plan") and a corresponding disclosure statement (the "Disclosure Statement"), in each case, in form and substance acceptable to the Senior Lenders, (ii) within sixty (60) days of the Process Start Date, the Court shall have entered an order approving the Disclosure Statement, (iii) within ninety (90) days of the Process Start Date, the Court shall have entered an order confirming the Plan; and (iv) by December 31, 2011, the Plan shall have been consummated if necessary FCC or other governmental approvals have been obtained.

(j)     Schedules and Statements.  By October 17, 2011, the Debtors shall file schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs pursuant to section 521(a) of the Bankruptcy Code and Bankruptcy Rule 1007(b) (collectively, the "Schedules and Statements").

(k)     Bar Date.  Within five (5) business days of filing the Schedules and Statements, the Debtors shall file a motion, in form and substance acceptable to the Senior Lenders, seeking entry of an order, in form and substance acceptable to the Senior Lenders, establishing the earliest possible date permitted under the Bankruptcy Rules and the Local Rules of the Court, as the deadline for filing proofs of claim in the Cases.

(l)     Approved Budget Compliance.  The Debtors shall be authorized to use Cash Collateral in accordance with the Approved Budget during the period covered by the Approved Budget, provided that, at any given time, the Debtors' actual cash disbursements shall not exceed the Approved Budget on a weekly basis, beginning in the second week of the Approved Budget, (a) (i) by more than 5% for the line item "Salaries,

Wages", (ii) by more than 15% for all other line items under the heading "Operating", and (iii) by more than 8% for the line item "Sub-Total Operating Disbursements" and (b) (i) by more than 5% for the line items for Akin Gump Strauss Hauer & Feld LLP, Rothschild Inc. and Rubenstein & Co., and (ii) by more than 15% for all other line items under the heading "Bankruptcy Disbursements", and (iii) by more than 8% for the line item "Sub-Total Bankruptcy Disbursements", as measured on a weekly basis beginning in the second week of the Approved Budget (the "Permitted Variance"). If the amount of Cash Collateral disbursed by the Debtors in any Approved Budget Period is less than the amount of Cash Collateral available for use by the Debtors in the Approved Budget during such period on either a line item or aggregate cumulative disbursements basis, then the Debtor may carry over any such unused amount to future Approved Budget Periods and allocate such unused amounts to the relevant line item calculation and/or the aggregated cumulative disbursement calculation, as applicable. For the avoidance of doubt, the Debtors may also apply and allocate unused amounts available for disbursement listed in the "Contingency" line of the Approved Budget to any other line item in the Approved Budget (other than "Salaries, Wages" and "Employee Benefits").

(m)     Reporting. The Debtors shall deliver to the Senior Lenders, in each case, in form and substance acceptable to the Senior Lenders, (i) on a weekly basis, by Tuesday of each week following entry of the Interim Order, an updated 13-week cash flow forecast for the succeeding 13 calendar weeks and (ii) on a weekly basis, by Thursday after the end of each calendar week following entry of the Interim Order, weekly and cumulative variance reporting on a line item basis, which (A) details the variance, if any, of actual cash disbursements and actual cash receipts from the Approved

Budget and (B) provides an explanation as to any per line item variance greater than 3% (collectively, the "Reporting").

(n)    Disclosure Deliverables.  By October 3, 2011, the Debtors shall deliver to the Senior Lenders (i) copies of all of the Debtors' contracts and leases (A) having a term of one year or greater (as renewed, as applicable) and (B) that may require the Debtors to incur potential aggregate liabilities of $50,000 or greater per annum (collectively, the "Material Contracts"), and any other contracts reasonably requested by the Senior Lenders, (ii) a schedule setting forth information regarding the Debtors' general trade and other payables on an individualized basis, (iii) a schedule setting forth all payments made by the Debtors during the ninety (90) days prior to the Relief Date, and (iv) copies of any formal or informal correspondence with the Federal Communications Commission and any other federal, state, or local government entity during the ninety (90) days prior to entry of the Interim Order regarding the Debtors' financial condition, plans for restructuring, interactions with the Senior Lenders, and any other matters that are material to the Debtors and their businesses.  Notwithstanding the foregoing, all information provided to the Secured Lenders pursuant to the deliverables described in subparagraphs (ii) and (iii) of this paragraph (n) shall remain in all respects subject to further review and revision by the Debtors prior to filing of the Schedules and Statements.

(o)    Monitor.  Within five (5) business days following entry of the Interim Order, the Debtors shall permit an industry professional selected by the Senior Lenders and acceptable to the Debtors (the "Monitor") to remain on-site at the Debtors' premises and have full and timely access to the Collateral, the Debtors' businesses, non-privileged books and records, management, and financial advisors for purposes of monitoring the

Collateral and the Debtors' finances and operations, and the Debtors employees and financial advisors shall cooperate and consult with the Monitor, and promptly provide the Monitor with all non-privileged information reasonably requested by the Monitor, provided, however, that the Debtors shall not be obligated to provide the Monitor with any information they are required to provide to the Agent and Senior Lenders under this Interim Order prior to the deadlines established herein for delivery of such information. The Monitor shall be required to execute a reasonable and customary confidentiality agreement prior to the receipt of any information.

(p)     Chief Restructuring Officer.  Within 30 days after the entry of orders for relief, the Debtors shall appoint a Chief Restructuring Officer (a "CRO").  The Senior Lenders shall provide the Debtors with a list of not less than three (3) qualified candidates for the CRO position within five (5) days after entry of this Interim Order, and the Debtors shall select the CRO from such list.  The Debtors reserve the right to request that the Senior Lenders propose additional candidates in the event the persons on the Senior Lenders' initial list are not available or conflicted.  The scope, terms and conditions of the CRO's corporate authority and retention shall be acceptable to the Senior Lenders in the exercise of their reasonable discretion.  Upon the occurrence of an Event of Default with respect to this provision, the Remedies Notice Period will be reduced from five (5) days to the earlier to occur of (i) three (3) days or (ii) the date upon which the Court enters an order determining whether an Event of Default has or has not occurred under this section.

(q)     Rights of Access and Information.  The Debtors shall (i) provide the Senior Lenders and any consultants or advisors engaged by the Senior Lenders with

reasonably full and timely access to the Collateral and the Debtors' senior management, senior financial personnel, and non-privileged books and records in the possession of the Debtors, including, without limitation, all records under the control of the Debtors relating to (A) any payments and any other transfers of value received by ICMC and Holdings from ICBC from January 2010 through the Relief Date and (B) any payments and other transfers of value made by ICMC and Holdings from January 2010 through the Relief Date to or for the benefit of ICBC, any other non-Debtor affiliate, and any shareholder of ICBC or any other non-Debtor affiliate in its capacity as such, in each case, upon reasonable advance notice during regular business hours, (ii) provide the Senior Lenders and any consultants or advisors engaged by the Senior Lenders with reasonable access to the Stations (as defined in the Senior Secured Credit Facility) and the personnel and non-privileged books and records related to the operations of the Stations, (iii) provide to the Senior Lenders and any consultants or advisors engaged by the Senior Lenders any and all financial reports prepared by the Debtors in the ordinary course of the Debtors' business as reasonably requested by the Senior Lenders or any consultants or advisors engaged by the Senior Lenders, and (iv) work diligently, and meet in person if so requested, with the Senior Lenders to identify those executory contracts and unexpired leases that are necessary for the prospective operations of the Debtors and those that are more appropriately rejected in the Cases.

(r)     <u>Maintenance of Collateral</u>.  The Debtors shall continue to maintain the Collateral in accordance with the Prepetition Loan Documents.

(s)     <u>Other Adequate Protection</u>.  The Prepetition Secured Parties shall be entitled to such other adequate protection as (i) reasonably agreed upon by the Senior

Lenders and the Debtors, and approved by this Court or (ii) otherwise granted by this Court.

4.    **Sufficiency of Adequate Protection.**    Notwithstanding any other provision of this Interim Order, the grant of Adequate Protection to the Agent and the Senior Lenders pursuant to this Interim Order is without prejudice to the right of the Agent and the Senior Lenders to seek modification of the Adequate Protection so as to provide different or additional adequate protection, and is without prejudice to the right of the Debtors or any other party in interest to contest any such modification.   The consent of the Agent and the Senior Lenders to the Debtors' use of the Cash Collateral (a) is limited to the use of the Cash Collateral authorized pursuant to this Interim Order and the other Cash Collateral Documents, and shall not extend to any other use of the Cash Collateral or to any modification or replacement of any of the terms of the Cash Collateral Documents and (b) does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Agent or the Senior Lenders that, absent such consent, their interests in the Collateral would be adequately protected pursuant to this Interim Order.

5.    **Perfection of Adequate Protection Liens.**

(a)    The Agent and the Senior Lenders are hereby authorized, but not required, in their sole discretion, to file or record (i) financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction or take any other action in order to validate and perfect the Adequate Protection Liens  and (ii) any amendments to any financing statements filed or recorded prior to the Relief Date to reflect any name changes, mergers, or any other changes to any of the Debtors' corporate identities (collectively, the "Lien Recording Documents") and the automatic

stay provisions of section 362 of the Bankruptcy Code are hereby modified and vacated to permit the Agent and the Senior Lenders to take such actions. Whether or not the Agent or the Senior Lenders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments or otherwise confirm perfection of the Adequate Protection Liens, such Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination (except as provided in this Interim Order or the other Cash Collateral Documents), at the time and on the date of this Interim Order, and this Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the Adequate Protection Liens, effective as of the date of this Interim Order.

(b)     The Agent and the Senior Lenders are hereby authorized, but not required, to file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which any of the Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Interim Order.

(c)     To the extent that any applicable nonbankruptcy law would otherwise restrict the grant, scope, enforceability, attachment, or perfection of the Adequate Protection Liens, or otherwise would impose filing or registration requirements with respect thereto, such law is preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of this Court; provided, that if the Agent or the Senior Lenders take steps to perfect the Adequate Protection

Liens under otherwise applicable state law, they do so without waiving the benefits of this provision of this Order.

(d)     In the event that any Lien Recording Document which the Agent or the Senior Lenders elect to file in accordance with this paragraph 5 contains any limitations, defects, deficiencies or other information which might otherwise limit or adversely affect the Adequate Protection Liens or any of the Agent's or the Senior Lenders' claims, rights, priorities, or protections afforded under this Interim Order and the other Cash Collateral Documents, such limitations, defects, deficiencies, or other information shall not impair, limit, restrict or adversely affect in any way any of the Adequate Protection Liens or any of the claims, rights, priorities, or protections granted under this Interim Order and the other Cash Collateral Documents.

(e)     The Debtors shall execute and deliver to the Agent and the Senior Lenders all such agreements, financing statements, instruments, and other documents as the Agent or the Senior Lenders may reasonably request to evidence, confirm, validate, or perfect the Adequate Protection Liens.

(f)     Any provision of any lease or other license, contract, or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest or license, the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the granting of the Adequate Protection Liens on such leasehold interest or license, or the proceeds of any assignment

or sale thereof by any Debtor, in favor of the Agent and the Senior Lenders in accordance with the terms of this Interim Order.

6. **<u>Limitation on Use of Cash Collateral</u>.** Notwithstanding anything in this Interim Order, the other Cash Collateral Documents, or in any other order by this Court to the contrary, no Cash Collateral, including the Carve-Out, may be used directly or indirectly by the Debtors, any Committee, or any other party to (a) investigate, object, contest, or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under the Prepetition Loan Documents or the Cash Collateral Documents, or the liens or claims granted under the Prepetition Loan Documents or the Cash Collateral Documents, (b) investigate, assert any claims, defenses or causes of action against the Agent, the Senior Lenders, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors, (c) investigate, prevent, hinder, or otherwise delay the Agent's or the Senior Lenders' assertion or enforcement of, or realization on, the Cash Collateral, the Collateral, the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Indebtedness, the Cash Collateral Documents, the Adequate Protection Liens, and the Adequate Protection Claims (except to contest the occurrence and/or continuance of an Event of Default (as defined below)), (d) investigate or seek to modify any of the rights granted to the Agent or the Senior Lenders under the Cash Collateral Documents, (e) pay any professional fees or expenses incurred by any professional in connection with any of the foregoing (except to contest the occurrence and/or continuance of an Event of Default (as defined below)), (f) seek to obtain liens or claims that are senior to, *pari passu* with, or junior to the Prepetition Liens, the Prepetition Indebtedness, the Adequate Protection Liens, or the Adequate Protection Claims, (g) make any payment to any non-Debtor affiliate, including, without limitation, ICBC, or (h) make any other payment that is not authorized by the Cash

Collateral Documents, in each case, without the Senior Lenders' prior written consent (and no such consent shall be implied by any other action, inaction, or acquiescence by the Senior Lenders). The foregoing limitations set forth in clauses (a) through (h) above (collectively, the "Limitations") shall apply in all instances; provided, that subject to paragraph 14 of this Interim Order, notwithstanding any of the foregoing Limitations, any Committee may spend up to an aggregate amount not to exceed $50,000 of the Carve-Out (as defined below) to investigate any potential claims against the Agent or the Senior Lenders and any potential defenses to Prepetition Indebtedness and Prepetition Liens.

       7.    **<u>Carve-Out</u>.**    The Collateral, the Prepetition Liens, the Prepetition Indebtedness, the Adequate Protection Liens, and the Adequate Protection Claims shall be subject in all respects to the Carve-Out (as defined below). For purposes of this Interim Order, the "<u>Carve-Out</u>" means an amount sufficient to satisfy (a) all fees required to be paid to the Clerk of the Bankruptcy Court and statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), 31 U.S.C. 3717, and 28 U.S.C. § 156(c), and all fees, expenses, and disbursements payable to any professionals retained pursuant to 28 U.S.C. § 156(c) (without regard to the Carve-Out Trigger Notice (as defined below)), (b) subject to the Limitations, all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code, in an aggregate amount not to exceed $100,000 (without regard to the Carve-Out Trigger Notice), and (c) subject to the Limitations and the 13-week professional fee accrual budget[6] prepared and delivered to the Agent and the Senior Lenders, which is attached to this Interim Order as <u>Exhibit 2</u>, all allowed unpaid professional fees, expenses, awards and disbursements of any professionals retained by

---

[6] For the avoidance of doubt, the unused portion of each weekly professional fee and expense accrual shall carry forward to future periods.

the Debtors or any Committee (the "Case Professionals") incurred or earned prior to receipt of a written notice delivered by the Senior Lenders to the Debtors, counsel to the Debtors, the Agent, counsel to the Agent, counsel to any Committee, and the U.S. Trustee, stating expressly that the Carve-Out has been invoked due to an Event of Default under this Interim Order (each, a "Carve-Out Trigger Notice"), and only to the extent that such professional fees and disbursements are and have been previously or are subsequently allowed by the Court, and (d) subject to the Limitations, all allowed unpaid fees and expenses of such Case Professionals incurred subsequent to the receipt by the Debtors of a Carve-Out Trigger Notice, in an aggregate amount not to exceed $250,000 (the "Termination Carve-Out Cap"), in each case, reduced by the amounts of any unapplied retainers held by the respective Case Professional. For the avoidance of doubt, so long as a Carve-Out Trigger Notice has not been delivered, the Carve-Out Cap shall not be reduced by the payment of fees or expenses allowed by the Court (whether allowed before or after delivery of a Carve-Out Trigger Notice) and payable under sections 328, 330 or 331 of the Bankruptcy Code, or 28 U.S.C. § 156(c). In connection with the Carve-Out, the Case Professionals shall make timely applications for allowance of their respective professional fees and disbursements.

8. **Remedies Notice Period.** Upon the occurrence and during the continuance of an Event of Default (as defined below), the Debtors' use of the Cash Collateral shall terminate in accordance with paragraph 2 of this Interim Order after the provision by the Senior Lenders to the Debtors of five (5) days' prior written notice of such Event of Default (such five (5) day period, the "Remedies Notice Period"), which written notice shall be served by the Senior Lenders via electronic mail and facsimile upon the Debtors, counsel to the Debtors, the Agent, counsel to the Agent, counsel to any Committee (and in the event no Committee is

appointed, the Top 30 Creditors), and the U.S. Trustee, and which written notice shall be filed with the Court by counsel to the Senior Lenders; provided, that the Debtors' use of the Cash Collateral shall not terminate as provided above if, during the Remedies Notice Period, the Court has determined that an Event of Default has not occurred and/or is not continuing.  Upon the expiration of the Remedies Notice Period, unless the Court has determined that an Event of Default has not occurred and/or is not continuing, the Debtors' right to use the Cash Collateral shall terminate in accordance with paragraph 2 of this Interim Order.  The Debtors' sole recourse with respect to opposing such termination shall be to contest the occurrence and/or continuation of an Event of Default.  During the Remedies Notice Period, the Debtors shall (a) have no right to use the Cash Collateral other than to (i) satisfy payroll obligations and other ordinary course obligations necessary for the Debtors to continue to operate in compliance with the FCC Licenses (as defined in the Senior Secured Credit Facility), in each case, in a manner consistent with the Approved Budget, (ii) fund the Carve-Out, and (iii) contest the occurrence and/or continuance of an Event of Default and (b) be entitled to an emergency hearing before the Court solely for the purpose of contesting whether an Event of Default has occurred and/or is continuing.

      9.     **Events of Default.**  For purposes of this Interim Order, "<u>Event of Default</u>" shall mean:

      (a)     A Successive Interim Order or the Final Order shall not have been entered by the Court within thirty (30) days after the date on which the Interim Order has been entered.

      (b)     Any failure of the Debtors to provide any of the Adequate Protection in accordance with the Cash Collateral Documents.

(c)     The occurrence of any event since the Relief Date that has or would reasonably be expected to have a material adverse effect on (i) the condition (financial or otherwise), businesses, operations, or property of the Debtors, including, without limitation, the FCC Licenses (as defined in the Senior Secured Credit Facility), (ii) the ability of any Debtor to fully and timely perform its respective obligations under the Cash Collateral Documents, or (iii) the legality, validity, binding effect, or enforceability of any of the Cash Collateral Documents (each, a "Material Adverse Change"); provided, that (x) the filing of the Cases, (y) any events of default occurring under the Prepetition Loan Documents, and (z) the exercise of any remedies by the Secured Lenders prior to the Relief Date shall not be taken into consideration for purposes of this subparagraph (c).

(d)     Any Debtor or any of its non-Debtor affiliates shall challenge in any action the validity or enforceability of any of the Cash Collateral Documents, the enforceability of the obligations under the Cash Collateral Documents, or the perfection or priority of the Adequate Protection Liens or the Adequate Protection Claims, or any material provision of any Cash Collateral Document shall cease to be valid or binding on any Debtor or any Debtor shall so assert in any pleading filed in any court.

(e)     A trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code), shall be appointed in any of the Cases.

(f)     Any lien on any of the Collateral or any claim which is senior to or *pari passu* with the Prepetition Liens, the Prepetition Indebtedness, the Adequate Protection

Liens, or the Adequate Protection Claims shall be granted (other than the Carve-Out) or any Debtor shall file a motion seeking approval of any such lien or claim.

(g)     The Debtors shall make any payment that is not authorized by the Cash Collateral Documents without the prior written consent of the Agent and Senior Lenders.

(h)     The Court shall enter an order granting relief from the automatic stay (i) to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any Debtor which have an aggregate value in excess of $1,000,000 or (ii) to permit other actions that could reasonably be expected to result in a Material Adverse Change.

(i)     Any order shall be entered reversing, amending, supplementing, staying for a period in excess of five (5) days, vacating or otherwise modifying in any material respect the Interim Order, any Successive Interim Order, or the Final Order without the prior written consent of the Senior Lenders (and no such consent shall be implied by any other action, inaction, or acquiescence by the Senior Lenders).

(j)     On a line item basis, the Debtors' actual cash disbursements shall vary from the Approved Budget in excess of the Permitted Variance.

(k)     The Debtors shall fail to deliver any of the Reporting.

(l)     A plan shall be confirmed in any of the Cases that does not provide for the indefeasible payment in full of the Adequate Protection Obligations.

(m)     Any Debtor seeking, or the filing of any motion by any Debtor or any other party seeking, authorization for (i) an additional or different use of the Cash Collateral or (ii) any postpetition financing for the Debtors, in each case, without the

prior written consent of the Senior Lender (and no such consent shall be implied by any other action, inaction, or acquiescence by the Senior Lender).

(n)     Any Debtor shall fail to comply with or perform any of the material terms, conditions, or obligations set forth in the Cash Collateral Documents, including, without limitation, (i) any Debtor filing any chapter 11 plan without the prior written consent of the Senior Lenders (and no such consent shall be implied by any other action, inaction, or acquiescence by the Senior Lenders), or (ii) any Debtor filing any motion to approve a sale of all or substantially all of any Debtor's assets without the prior written consent of the Senior Lenders (and no such consent shall be implied by any other action, inaction, or acquiescence by the Senior Lenders).

(o)     Any of the Cases shall be dismissed or converted into a case under chapter 7 of the Bankruptcy Code.

(p)     The commencement, formal participation in, or continuation of any judicial action or proceeding in law or equity, by the Debtors, against the Agent or the Senior Lenders.

10.     **Section 552(b).**  Subject to entry of any Successive Interim Order or the Final Order (whichever is earlier), the Agent and the Senior Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Agent and the Senior Lenders with respect to proceeds, products, offspring, or profits of any of the Collateral.

11.     **Limitations on Charging Expenses Against Collateral.**  Subject to entry of any Successive Interim Order or the Final Order (whichever is earlier), no costs or expenses of administration of any of the Cases or any future proceeding that may result from the

Cases (including, without limitation, liquidation in bankruptcy, the commencement of any action adverse to the Agent or the Senior Lenders or their rights under this Interim Order, any other Cash Collateral Document, the Prepetition Loan Documents, or any other order or other proceedings under the Bankruptcy Code), except to the extent of the Carve-Out, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Senior Lenders (and no such consent shall be implied from any other action, inaction, or acquiescence by the Senior Lenders).

12.     **Payments Free and Clear.**   Subject to entry of any Successive Interim Order or the Final Order (whichever is earlier), any and all payments or proceeds remitted to the Agent and the Senior Lenders pursuant to the provisions of this Interim Order or any subsequent order of the Court shall be received free and clear (except to the extent of the Carve-Out) of any claim, charge, assessment, or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (whether asserted or assessed by, through, or on behalf of, the Debtors) or section 552(b) of the Bankruptcy Code.

13.     **Preservation of Rights.**

(a)     Unless all Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall constitute an Event of Default if any of the Debtors seek, or if there is entered, (i) any modifications or extensions of this Interim Order without the prior written consent of the Agent and the Senior Lenders (and no such consent shall be implied by any other action, inaction, or acquiescence by the Agent or the Senior Lenders), (ii) any order authorizing an additional or different use of the Cash Collateral or any postpetition financing for the Debtors, in each case, without the prior written consent of the Agent and the Senior Lenders (and no such consent shall be

implied by any other action, inaction, or acquiescence by the Agent or the Senior Lenders), or (iii) an order dismissing any of the Cases or converting any of the Cases to cases under chapter 7 of the Bankruptcy Code. If an order dismissing or converting to chapter 7 any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (A) the Adequate Protection Liens and the Adequate Protection Claims shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been paid and satisfied in full, and that such Adequate Protection Liens and Adequate Protection Claims shall, notwithstanding such dismissal or conversion, remain binding on all parties in interest and (B) this Court shall retain jurisdiction for purposes of enforcing the Adequate Protection Liens and the Adequate Protection Claims.

(b)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacation, or stay shall not affect (i) the validity of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Agent or the Senior Lenders, of the effective date of such reversal, modification, vacation, or stay or (ii) the validity or enforceability of the Adequate Protection Liens, the Adequate Protection Claims, or this Interim Order with respect to any Adequate Protection Obligations. Notwithstanding any such reversal, modification, vacation, or stay, any use of the Cash Collateral by the Debtors or any Adequate Protection Obligations incurred by the Debtors to the Agent or the Senior Lenders prior to the actual receipt by the Agent or the Senior Lenders of written notice of such reversal, modification, vacation, or stay shall be governed in all respects by the

original provisions of this Interim Order, and the Agent and the Senior Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in this Interim Order and the other Cash Collateral Documents with respect to all uses of Cash Collateral and the Adequate Protection Obligations.

(c)     Except as expressly provided in this Interim Order and the other Cash Collateral Documents, the Adequate Protection Liens, the Adequate Protection Claims, the Adequate Protection Obligations, and all other rights and remedies of the Agent and the Senior Lenders granted by this Interim Order and the other Cash Collateral Documents shall survive, and shall not be modified, impaired, or discharged by entry of an order (i) converting any of the Cases to a case under chapter 7 or dismissing any of the Cases, or by any other act or omission or (ii) confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Interim Order and the other Cash Collateral Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the Adequate Protection Claims, the Adequate Protection Obligations, and all other rights and remedies of the Agent and the Senior Lenders granted by this Interim Order and the other Cash Collateral Documents shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full.

(d)     Notwithstanding anything in this Interim Order to the contrary, entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly

or implicitly, or otherwise impair (i) any of the rights of any of the Agent or the Senior Lenders under the Bankruptcy Code or under any nonbankruptcy law, including, without limitation, the right of any of the Agent and the Senior Lenders to (A) request modification of the automatic stay of section 362 of the Bankruptcy Code, (B) request dismissal of any of the Cases, conversion of any of the Cases to a case or cases under chapter 7 of the Bankruptcy Code, or the appointment of a chapter 11 trustee or examiner (including with expanded powers), or (C) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (ii) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Agent and the Senior Lenders.

14.    **Release of Claims and Defenses; Related Provisions.**

(a)    Release.  Subject to entry of any Successive Interim Order or the Final Order (whichever is earlier) and the rights of any Committee or any other party in interest as provided in subparagraph (b) of this paragraph 14, the Debtors forever release, waive, and discharge the Agent and the Senior Lenders, together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns, and/or successors (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Prepetition Loan Documents, any aspect of the prepetition relationship between the Debtors and the Agent, and the Debtors and the Senior Lenders, in each case, relating to any of the Prepetition Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses as to the extent, validity, priority, or perfection of the Prepetition Liens or Prepetition Indebtedness, "lender liability" claims and causes of action, any actions, claims, or defenses under chapter 5 of the Bankruptcy

Code, or any other claims and causes of action (all such claims, defenses, and other actions described in this paragraph 14, collectively the "Claims and Defenses"). Nothing contained in this subparagraph (a) shall affect the rights of any Committee or any other party in interest to undertake any action, on its own behalf, or on behalf of the Debtors' estates, with respect to any investigation or prosecution of Claims and Defenses that is permitted in subparagraphs (b) and (c) of this paragraph 14.

(b)    Challenges.    The acknowledgments, admissions, confirmations, and releases contained in this Interim Order, including, without limitation, in paragraph G and subparagraph (a) of this paragraph 14, shall be binding upon the Debtors in all circumstances. Notwithstanding anything contained in this Interim Order to the contrary, and subject to the Limitations, the extent, validity, priority, perfection and enforceability of the Prepetition Indebtedness, and Prepetition Liens, and all acknowledgments, admissions, confirmations, and releases of the Debtors above, are for all purposes subject to the rights of any party in interest, other than a Debtor, to seek to invalidate, or otherwise challenge the Prepetition Indebtedness or the Prepetition Liens, including by properly filing a complaint pursuant to Bankruptcy Rule 7001 or by otherwise properly asserting a contested matter (any of these actions, a "Challenge"); provided, that any such Challenge must be commenced or asserted in this Court within sixty (60) days after entry of any Successive Interim Order or the Final Order (whichever is earlier), if brought by any non-Debtor party in interest. Except to the extent that a Challenge is timely commenced within the time periods set forth in this subparagraph (b) (or such timely asserted Challenge does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of subparagraph (c) of this paragraph 14), then

any and all Claims and Defenses against the Released Parties shall be, without further notice or order of the Court, deemed to have been forever relinquished, released, and waived as to such Committee and other party, and if such Challenge is timely asserted on or before such date, any and all Claims and Defenses that are not expressly asserted in such Challenge shall be deemed, immediately and without further action, to have been forever relinquished, released, and waived as to such Committee and other party.

(c)     <u>Allowance of Prepetition Indebtedness</u>.     Except to the extent that a Challenge is timely commenced in accordance with subparagraph (b) of this paragraph 14 and such timely asserted Challenge results in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of this subparagraph (c), then, without the requirement or need to file any proof of claim with respect thereto, (i) the Prepetition Indebtedness shall constitute allowed claims for all purposes in the Cases and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceedings if any of the Cases are converted to a case under chapter 7 of the Bankruptcy Code (each, a "<u>Successor Case</u>"), (ii) the Prepetition Liens shall be deemed legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), perfected, not subject to subordination, recharacterization, or avoidance for all purposes in the Cases and any Successor Case, (iii) the release of the Claims and Defenses against the Released Parties shall be binding on all parties in interest in the Cases and any Successor Case, and (iv) the Prepetition Indebtedness, the Prepetition Liens, releases of the Claims and Defenses against the Released Parties, and prior payments on account of or with respect to the Prepetition Indebtedness shall not be subject to any other or further claims, cause of

action, objection, contest, setoff, defense, or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor.  Nothing in this Interim Order shall confer, or be deemed to have conferred, standing upon the Committee or any other party to bring, assert, commence, continue, prosecute or litigate the Claims and Defenses against any Released Party.

15.     **Order Governs.**  In the event of any inconsistency between the provisions of this Interim Order and the other Cash Collateral Documents, the provisions of this Interim Order shall govern.

16.     **Binding Effect; Successors and Assigns.**  The provisions of this Interim Order shall be binding upon all parties in interest in the Cases, including, without limitation, the Agent, the Senior Lenders, any Committee, and all of the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Agent, the Senior Lenders, any Committee, the Debtors, and each of their respective successors and assigns; provided, that neither the Agent nor the Senior Lenders shall have any obligation to consent to use of Cash Collateral in a chapter 7 case or after appointment of a chapter 11 trustee or other legal representative of the Debtors.

17.     **No Third Party Rights.**  Except as explicitly provided for in this Interim Order, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any other direct, indirect or incidental beneficiary.

18.     **Notice of Final Hearing**.  The Debtors shall promptly serve copies of this Interim Order and a notice of the Final Hearing (the "Final Hearing Notice") to be held on **October 4, 2011 at 11:00 a.m.** to consider entry of the Final Order on (a) the U.S. Trustee; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Senior Lenders; (d) counsel to the Agent; and (e) counsel to Inner City Broadcasting Corporation.  The Final Hearing Notice shall state that any party in interest objecting to entry of the Final Order shall file written objections with the Court no later than **5:00 p.m. on September 28, 2011**, which objections shall be served so that the same are received on or before such date and time by (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agent under the Debtors' prepetition secured term loan; (d) counsel to Yucaipa Corporate Initiatives Fund II, L.P. and Yucaipa Corporate Initiatives (Parallel) Fund II, L.P.; (e) counsel to Fortress Credit Funding I, LP, Fortress Credit Funding II, LP, Drawbridge Special Opportunities Fund Ltd., and ICBC CF LLC; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; and (h) the Federal Communications Commission.

19.     **Effectiveness.**  This Interim Order shall be effective and enforceable immediately upon entry.

20.     **Jurisdiction.**  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: September 9, 2011
        New York, New York

                            */s/ Shelley C. Chapman*
                            UNITED STATES BANKRUPTCY JUDGE