Ira S. Dizengoff, Esq.
Shaya Rochester, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Scott L. Alberino, Esq.
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INNER CITY MEDIA CORPORATION, *et al.*, | ) Case No. 11-13967 (SCC) |
| | ) |
| Debtors.[1] | ) Joint Administration Requested |
| | ) |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE RELIEF DATE

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Inner City Media Corporation ("*ICBC Media*") and its debtor affiliates, as debtors and

debtors in possession (collectively, the "*Debtors*"), file this application (the "*Application*") for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: Inner City Media Corporation (5309), ICBC Broadcast Holdings, Inc. (2429), Inner City Broadcasting Corporation of Berkeley (5990), ICBC Broadcast Holdings – CA, Inc. (5311), ICBC-NY, L.L.C. (8879), Urban Radio, L.L.C. (6747), Urban Radio I, L.L.C. (2649), Urban Radio II, L.L.C. (2701), Urban Radio III, L.L.C. (2747), Urban Radio IV., L.L.C. (3662), Urban Radio of Mississippi, L.L.C. (1154), and Urban Radio of South Carolina, L.L.C. (5231). The principal corporate location of the Debtors is: 3 Park Avenue, 40th Floor, New York, NY 10016. The service address for all of the Debtors is 3 Park Avenue, 40th Floor, New York, NY 10016.

entry of an order, substantially in the form attached hereto as **Exhibit A** (the *"Proposed Order"*), authorizing the Debtors to employ and retain Rothschild Inc. (*"Rothschild"*) as their financial advisor and investment banker in connection with their chapter 11 cases *nunc pro tunc* to the Relief Date (as defined herein) in accordance with the terms and conditions of that engagement letter, dated as of August 10, 2011 (the *"Engagement Letter"*), annexed as **Schedule 1** to **Exhibit A** attached hereto and incorporated by reference herein. In support of this Application, the Debtors submit the Declaration of Neil A. Augustine, a Senior Managing Director and co-head of the North America Debt Advisory and Restructuring Group of Rothschild (the *"Augustine Declaration"*), which is attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully state as follows:

<u>**Introduction**</u>

1.      On August 19, 2011 (the *"Involuntary Date"*), involuntary chapter 11 petitions (the *"Involuntary Petitions"*) were filed against each of the Debtors by Yucaipa Corporate Initiatives Fund II, L.P., Yucaipa Corporate Initiatives (Parallel) Fund II, L.P., CF ICBC LLC, Fortress Credit Funding I L.P., and Drawbridge Special Opportunities Fund Ltd. (collectively, the *"Petitioning Creditors"*).[2]

2.      On the date hereof (the *"Relief Date"*), the Debtors answered the Involuntary Petitions and consented to entry of an order for relief commencing chapter 11 cases for each of the Debtors. The Debtors are continuing to operate their businesses and manage their properties

---

[2]     The Petitioning Creditors also filed an involuntary chapter 11 petition against ICBC Broadcast Holdings – NY, Inc. That entity, however, was merged into Debtor ICBC-NY, L.L.C. in 2005 and, therefore, no longer exists. Accordingly, the Debtors have requested that the Petitioning Creditors withdraw the involuntary petition filed against ICBC Broadcast Holdings – NY, Inc.

23492942v13

as debtors in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the *"Bankruptcy Code"*).[3]

## Jurisdiction

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

5.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*) and rules 2014-1, 2016-1 and 2016-2(g) of the Local Bankruptcy Rules for the Southern District of New York (the *"Local Bankruptcy Rules"*).

## Background

### A.      Rothschild's Qualifications.

6.      The Debtors seek to retain Rothschild as their financial advisor and investment banker because, among other things, Rothschild has extensive experience in, and an excellent reputation for, providing high-quality investment banking and financial advisory services to debtors in bankruptcy reorganizations and other restructurings.

7.      Rothschild is a member of one of the world's leading independent investment banking groups, with more than forty (40) offices in more than thirty (30) countries, including an office located at 1251 Avenue of the Americas, 51st Floor, New York, New York 10020. Rothschild has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital raises and other financial advisory and investment banking services, and particular

---

[3]    Information regarding the Debtors' business and the background of these chapter 11 cases can be found in the Declaration of William C. Cooper Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Pleadings (the *"First Day Declaration"*) filed on the Relief Date.

experience in providing high-quality financial advice to financially troubled companies. Rothschild is an experienced bankruptcy and restructuring advisor to debtors in a variety of industries. Rothschild is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

8.     Rothschild and its professionals have extensive experience working with financially troubled companies in the radio sector and a variety of other industries in complex financial and operational restructurings, both in and out-of-court. Rothschild's professionals are providing or have provided financial advisory, investment banking and other services in connection with the restructuring of numerous companies, including the following: *In re Sbarro Inc.*, 11-11527 (Bankr. S.D.N.Y. Apr. 4, 2011), *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (Bankr. D. Del. Mar. 28, 2011); *In re Neenah Enters., Inc.*, Case No. 10-10360 (Bankr. D. Del. Feb. 3, 2010); *In re Blockbuster, Inc.*, Case No. 10-14997 (Bankr. S.D.N.Y. Nov. 2, 2010); *In re RHI Entm't, Inc.*, Case No. 10-16536 (Bankr. S.D.N.Y. Sept. 10, 2010); *In re Penton Bus. Media Holdings, Inc.*, Case No. 10-10689 (Bankr. S.D.N.Y. Mar. 5, 2010); *In re FairPoint Commc'n, Inc.*, Case No. 09-16335 (Bankr. S.D.N.Y. Jan. 11, 2010); *In re Trident Res. Corp.*, Case No. 09-13150 (Bankr. D. Del. Sept. 8, 2009); *In re Visteon Corp.*, Case No. 09-11786 (Bankr. D. Del. July 1, 2009); *In re Sun-Times Media Group, Inc.*, Case No. 09-11092 (Bankr. D. Del. May 11, 2009); *In re Milacron Inc.*, Case No. 09-11235 (Bankr. S.D. Ohio Apr. 6, 2009); *In re PPI Holdings, Inc.*, Case No. 08-13289 (Bankr. D. Del. Feb. 4, 2009); *In re Tronox Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Jan. 12, 2009); *In re Recycled Paper Greetings Inc.*, Case No. 09-10002 (Bankr. D. Del. Jan. 23, 2009); *In re Circuit City Stores, Inc.*, Case No. 08-35653 (Bankr. E.D. Va. Jan. 9, 2009); *In re VeraSun Energy Corp.*, Case No. 08-12606 (Bankr. D. Del. Jan. 2, 2009); *In re Motor Coach Indus. Int'l, Inc.*, Case No. 08-12136

4

(Bankr. D. Del. Oct. 16, 2008); *In re BHM Techs.*, Case No. 08-04413 (Bankr. W.D. Mich. July 25, 2008); *In re Hilex Poly Co. LLC*, Case No. 08-10890 (Bankr. D. Del. May 30, 2008); *In re Werner Holding Co. (DE), Inc.*, Case No. 06-10578 (Bankr. D. Del. June 12, 2006); *In re Delphi Corp.*, Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005); *In re Int'l Wire*, Case No. 04-11991 (Bankr. S.D.N.Y. July 1, 2004); *In re Solutia Inc.*, Case No. 03-17949 (Bankr. S.D.N.Y. Apr. 13, 2004); *In re WestPoint Stevens, Inc.*, Case No. 03-13532 (Bankr. S.D.N.Y. July, 22, 2003); *In re James River Coal Co.*, Case No. 03-04095 (Bankr. M.D. Tenn. May 23, 2003); *In re Superior TeleCom Inc.*, Case No. 03-10607 (Bankr. D. Del. Apr. 10, 2003); *In re Viasystems Group, Inc.*, Case No. 02-14867 (Bankr. S.D.N.Y. Nov. 21, 2002); *In re Guilford Mills, Inc.*, Case No. 02-40667 (Bankr. S.D.N.Y. June 26, 2002).

9.     In light of the size and complexity of these chapter 11 cases, the resources, capabilities and experience of Rothschild in advising the Debtors is crucial to the Debtors' successful restructuring.    An experienced investment bank and financial advisor such as Rothschild fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.

10.     Since its retention on August 10, 2011 and up to the Relief Date, Rothschild has become familiar with the Debtors and their business, including the Debtors' financial affairs, creditors, debt structure, operations and related matters.    Having worked with the Debtors' management and their other advisors in connection with the Debtors' restructuring efforts, Rothschild has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.    Accordingly, Rothschild is both well qualified and uniquely able to represent the Debtors in the chapter 11 cases in an efficient and timely manner.

23492942v13

**B.     Services to Be Provided.[4]**

11.     The parties have entered into the Engagement Letter, which governs the relationship between Rothschild and the Debtors.  The terms and the conditions of the Engagement Letter were negotiated between the Debtors and Rothschild, and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Letter and subject to further order of this Court, in consideration for the compensation contemplated by the Engagement Letter, Rothschild has provided and has agreed to provide the following financial advisory and investment banking services as deemed necessary, appropriate and feasible, and as requested by the Debtors (the *"Services"*):

    (a)     identify and/or initiate potential Transactions;

    (b)     review and analyze the business plans and financial projections prepared by the Debtors including, but not limited to, testing assumptions and comparing those assumptions to historical Debtor and industry trends;

    (c)     evaluate the Debtors' debt capacity in light of their projected cash flows and assist in the determination of an appropriate capital structure for the Debtors;

    (d)     assist the Debtors in soliciting financing to the extent the Debtors require incremental financing and/or refinancing capital;

    (e)     assist the Debtors and their other professionals in reviewing the terms of any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

    (f)     determine a range of values for the Debtors and any securities that the Debtors offer or propose to offer in connection with a Transaction;

    (g)     advise the Debtors on the risks and benefits of considering a Transaction with respect to the Debtors' intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Debtors;

---

[4]     The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only.  In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

23492942v13

(h)     solicit proposals and review and analyze any proposals the Debtors receive from third parties in connection with a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(i)     assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Debtors and/or their respective representatives in connection with a Transaction or other transaction;

(j)     advise the Debtors with respect to, and attend, meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(k)     if requested by the Debtors, participate in hearings before this Court and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan; and

(l)     render (to the extent permitted by further orders of this Court) such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Debtors.

12.     The services that Rothschild will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. All of the services that Rothschild will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as to avoid duplicative efforts among the professionals retained in these chapter 11 cases. Rothschild will also use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

## C.     Professional Compensation.

13.     Subject to Court approval, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses and any other applicable procedures and orders of this Court, the Debtors will compensate Rothschild in accordance with the terms and conditions of the Engagement Letter,

which provides a compensation structure (as modified by the Proposed Order, the *"Fee and Expense Structure"*) that provides in relevant part as follows:[5]

(a) <u>Monthly Fees</u>: Whether or not a Transaction is proposed or consummated, an advisory fee (the *"Monthly Fee"*) of $150,000 per month, provided, however, that beginning after the four-month anniversary of this Agreement, 50% of any and all future Monthly Fees paid by the Debtors shall be credited against the Completion Fee.

(b) <u>Completion Fee</u>: The Engagement Letter provided for a fee (the *"Completion Fee"*) of $2,500,000, payable immediately upon the earlier of (i) the confirmation and effectiveness of a Plan and (ii) the closing of another Transaction.

(c) <u>New Capital Fee</u> A new capital fee (the *"New Capital Fee,"* and together with the Monthly Fees and any Completion Fee, the *"Fees"*) equal to (i) 1.0% of the face amount of any senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (ii) 2.0% of the face amount of any junior secured debt raised; (iii) 3.0% of the face amount of any senior or subordinated unsecured debt raised and (iv) 4.0% of any equity capital, or capital convertible into equity, raised, including, without limitation, equity underlying any warrants, purchase rights and similar contingent equity securities. The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. The New Capital Fee shall be payable only to the extent it is raised from a source that is outside of the Company's (as defined in the Engagement Letter) current capital structure, including without limitation, Inner City Broadcasting Corporation or any of its affiliates.

(d) <u>Reimbursement of Expenses</u>: In addition to the Fees, regardless of whether any Transaction occurs, the Debtors shall promptly reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement, and the enforcement of this Agreement, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court). Reasonable expenses also include, but are not limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services.

(e) <u>Fee Cap:</u> The aggregate amount of Fees shall not exceed $4,000,000.

---

[5] The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

14. The Debtors have shared a draft of this Application with the Petitioning Creditors which have discussed Rothschild's retention with the Debtors and Rothschild. The Petitioning Creditors have consented to and agreed to support the entry of the Proposed Order, which, among other things, (i) modifies the Completion Fee to $1,250,000 and (ii) approves the Fee and Expense Structure pursuant to section 328 of the Bankruptcy Code. The Debtors and Rothschild agreed to modification of the Completion Fee based upon such consent and agreement by the Petitioning Creditors.

15. The Fee and Expense Structure is comparable to compensation generally charged by other firms of similar stature to Rothschild for comparable engagements, both in and out of bankruptcy. Rothschild and the Debtors believe that the foregoing compensation arrangements are both reasonable and market-based and consistent with Rothschild's normal and customary billing practices for comparably sized and complex cases, both in and out-of-court, involving the services to be provided in the chapter 11 cases.

16. In determining the level of compensation to be paid to Rothschild and its reasonableness, the Debtors compared Rothschild's fee proposal to the other proposals received by the Debtors in the investment banking selection process. The Debtors also compared Rothschild's proposed fees with the range of investment banking fees in other large and complex chapter 11 cases. In both instances, the Debtors found Rothschild's proposed fees to be reasonable and within the range of other comparable transactions.

17. The Debtors submit that Rothschild has obtained valuable institutional knowledge of the Debtors' businesses, financial affairs and creditors as a result of providing services to the Debtors before the Relief Date and that Rothschild is both well qualified and uniquely able to perform these services and assist the Debtors in the chapter 11 cases. Moreover, the Debtors

believe that Rothschild's services will assist the Debtors in a successful outcome of the chapter 11 cases.

18.     To induce Rothschild to do business with the Debtors in bankruptcy, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Rothschild expects to undertake and the potential for failure resulting from factors outside of Rothschild's control.

19.     The Debtors are advised by Rothschild that it is not the general practice of investment banking and financial services firms to keep detailed time records similar to those customarily kept by attorneys. Notwithstanding the foregoing, Rothschild intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules and any applicable orders of this Court. Such applications will include time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. Because Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour (.1) increments or provide or conform to a schedule of hourly rates for its professionals, Rothschild is seeking a waiver, pursuant to Local Bankruptcy Rule 2016-2(g) of the requirement to bill activities in one-tenths (.1) of an hour. Rothschild requests that it be permitted to file time records in one half (.5) hour increments. Rothschild will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above. Rothschild's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter upon approval by this Court.

23492942v13

20.     Rothschild's broadcasting industry knowledge, strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Rothschild's engagement hereunder, were important factors in determining the Fee and Expense Structure.  The Debtors believe that the ultimate benefit of Rothschild's services hereunder cannot be measured by reference to the number of hours to be expended by Rothschild's professionals in the performance of such services.

21.     In addition, the Fee and Expense Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Rothschild and its professionals hereunder, that such commitment may foreclose other opportunities for Rothschild, and that the actual time and commitment required of Rothschild and its professionals to perform its services hereunder may vary substantially from week to week or month to month.

22.     The Debtors and Rothschild negotiated the Fee and Expense Structure to function as and be an interrelated, integrated unit, in correspondence with Rothschild's services, which Rothschild renders not in parts, but as a whole.  It would be contrary to the intention of Rothschild and the Debtors for any isolated component of the entire Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Rothschild's services.  Instead, the Debtors and Rothschild intend that Rothschild's services be considered as a whole that is to be compensated by the Fee and Expense Structure in its entirety.

23.     In sum, in light of the foregoing and given the numerous issues which Rothschild may be required to address in the performance of its services hereunder, Rothschild's commitment to the variable level of time and effort necessary to address all such issues as they

11

arise, and the market prices for Rothschild's services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtors believe that the Fee and Expense Structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

24.     Accordingly, as more fully described below, the Debtors believe that this Court should approve Rothschild's retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Rothschild's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

25.     Rothschild has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

**D.     Indemnification Provisions.**

26.     As part of the overall compensation payable to Rothschild under the terms of the Engagement Letter, and as more fully described in **Exhibit A** thereto, the Debtors have agreed to certain indemnification and contribution obligations as described in the Engagement Letter and **Exhibit A** thereto (the "*Indemnification Obligations*").

27.     The indemnification provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for financial advisors and investment bankers such as Rothschild for proceedings both out of court and in chapter 11. *See, e.g., In re Penton Business Media Holdings, Inc.*, Case No. 10-10689 (AJG) (Bankr. S.D.N.Y. Mar. 5, 2010); *In re FairPoint Commc'ns, Inc.*, Case No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan 11, 2010); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009); *In re Movie Gallery, Inc.*, Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 18, 2007); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007); *In re Calpine Corp.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 2, 2006); *In re Foamex Int'l,*

*Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005); *In re Spiegel*, Case No. 03-11540 (CB) (Bankr. S.D.N.Y. Aug. 7, 2003); *In re Oakwood Homes Corp.*, Case No. 02-13396 (PJW) (Bankr. D. Del. Jul. 21, 2003); *In re Acterna*, Case No. 03-12837 (BRL) (Bankr. S.D.N.Y. Jun. 24, 2003).

28.     The terms of the Engagement Letter, including the Indemnification Provisions, were fully negotiated between the Debtors and Rothschild at arm's length and in good faith. The Debtors respectfully submit that the Indemnification Provisions, as modified by the order requested herein, are reasonable and in the best interests of the Debtors, their estates and creditors. Accordingly, as part of this Application, the Debtors request that this Court approve the Indemnification Provisions.

**E.     Rothschild's Disinterestedness.**

29.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Augustine Declaration: (a) Rothschild is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates; and (b) Rothschild has no connection to the Debtors, their creditors or their related parties except as may be disclosed in the Augustine Declaration. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Rothschild's retention are discovered or arise, Rothschild will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

30.     During the ninety days before the Relief Date, the Debtors paid Rothschild $300,000 in fees and expenses on account of services rendered prior to the Relief Date, inclusive of the retainer, in the amount of $100,000, which was fully applied following this Court's direction. Otherwise, Rothschild did not receive any payments from the Debtors during the

13

ninety days preceding the Relief Date. As of the Relief Date, Rothschild does not hold a prepetition claim against the Debtors for services rendered.

31.     Rothschild will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Rothschild will inform this Court.

## Relief Requested

32.     By this Application, the Debtors request entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Bankruptcy Rules 2014-1, 2016-1 and 2016-2(g) authorizing the Debtors to retain and employ Rothschild as their financial advisor and investment banker in accordance with the terms and conditions set forth in the Engagement Letter, as modified by the proposed retention order, effective *nunc pro tunc* to the Relief Date.

## Basis for Relief

33.     The Debtors seek authority to employ and retain Rothschild as their financial advisor and investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

34.     In addition, the Debtors seek approval of the Engagement Letter (including without limitation the Fee and Expense Structure and the Indemnification Obligations) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on flexible terms that reflect the nature of their services and market conditions.    Thus, section 328 is a significant departure from prior bankruptcy practice relating to the compensation of professionals.  Indeed, as the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Secs. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

35.     To mitigate this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.  *See, e.g., In re Chemtura Corp.*, Case No. 09-11233 (Bankr. S.D.N.Y. May 15, 2009); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (Bankr. S.D.N.Y. April 15, 2009); *In re Lyondell Chem. Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Feb. 25, 2009); *In re Wellman, Inc.*, Case No.

08-10595 (S.D.N.Y. Apr. 2, 2008); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. April 26, 2006); *see also In re Source Interlink Cos., Inc.*, Case No. 09-11424 (Bankr. D. Del. May 22, 2009); *In re Hines Horticulture, Inc.*, Case No. 08-11922 (Bankr. D. Del. Sept. 10, 2008); *In re Mervyn's Holdings, LLC*, Case No. 08-11586 (Bankr. D. Del. Aug. 27, 2008); *In re Linens Holding Co.*, Case No. 08-10832 (Bankr. D. Del. June 19, 2008); *In re Tropicana Entm't, LLC*, Case No. 08-10856 (Bankr. D. Del. May 30, 2008); *In re Leiner Health Prods., Inc.*, Case No. 08-10446 (Bankr. D. Del. April 8, 2008); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (Bankr. D. Del. April 26, 2007); *In re Dura Auto. Sys., Inc.*, Case No. 06-11202 (Bankr. D. Del. Dec. 6, 2006); *In re FLYi, Inc.*, Case No. 05-20011 (Bankr. D. Del. Dec. 2, 2005); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (Bankr. D. Del. Oct. 17, 2005).

36.     The Fee and Expense Structure appropriately reflects the nature and scope of services to be provided by Rothschild, Rothschild's substantial experience with respect to investment banking services, and the fee and expense structures typically utilized by Rothschild and other leading investment banks that do not bill their clients on an hourly basis.

37.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g., In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. May 1, 2006); *In re Delphi Corp.*, Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005); *In re Solutia Inc.*, Case No. 03-17949 (Bankr. S.D.N.Y. April 13, 2003); *see also In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005).

38.     Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the

16

> employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee* basis, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added). This change makes clear that debtors are able to retain a professional on a fixed fee basis with bankruptcy court approval, such as the Fee and Expense Structure for Rothschild in the Engagement Letter.

39.     The Debtors believe the Fee and Expense Structure set forth in the Engagement Letter are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee and Expense Structure adequately reflects: (a) the nature of the services to be provided by Rothschild; and (b) fee and expense structures and indemnification provisions typically utilized by Rothschild and other leading investment banking firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis. In particular, the Debtors believe the Fee and Expense Structure creates a proper balance between fixed, monthly fees and contingency fees based on the successful consummation of certain sales of the Debtors' assets, raises of new capital and the overall success of these chapter 11 cases. Moreover, Rothschild's substantial experience with respect to investment banking services, coupled with the nature and scope of work already performed by Rothschild before the Relief Date, further suggest the reasonableness of the Fee and Expense Structure.

40.     Likewise, indemnification arrangements similar to the indemnification provisions in the Engagement Letter have been approved and implemented in other large chapter 11 cases by courts in this jurisdiction and others. *See e.g., In re Chemtura Corp.*, Case No. 09-11233 (Bankr. S.D.N.Y. May 15, 2009); *In re Charter Commc'ns, Inc.*, Case No. 09-11435 (Bankr. S.D.N.Y. Apr. 15, 2009); *In re Tronox Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Apr. 7, 2009);

17

*In re Lyondell Chem. Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Feb. 25, 2009); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Apr. 26, 2006); *In re Joan & David Halpern, Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000) (overruling United States Trustee's objection to indemnity provisions); *see also In re Hines Horticulture, Inc.*, Case No. 08-11922 (Bankr. D. Del. Sept. 10, 2008); *In re Mervyn's Holdings, LLC*, Case No. 08-11586 (Bankr. D. Del. Aug. 27, 2008); *In re Leiner Health Prods., Inc.*, Case No. 08-10446 (Bankr. D. Del. Apr. 8, 2008); *In re Dura Auto. Sys., Inc.*, Case No. 06-11202 (Bankr. D. Del. Dec. 6, 2006); *In re FLYi, Inc.*, Case No. 05-20011 (Bankr. D. Del. Jan. 17, 2006); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (Bankr. D. Del. Oct. 17, 2005).

41.     The Debtors seek authority to employ and retain Rothschild as their financial advisor and investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

## Notice

42.     No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. The Debtors have provided notice of this Motion to: (a) the Office of the U.S. Trustee; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agent under the Debtors'

prepetition secured term loan; (d) counsel to Yucaipa Corporate Initiatives Fund II, L.P. and Yucaipa Corporate Initiatives (Parallel) Fund II, L.P.; (e) counsel to Fortress Credit Funding I, LP, Fortress Credit Funding II, LP, Drawbridge Special Opportunities Fund Ltd., and ICBC CF LLC; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; and (h) the Federal Communications Commission. A copy of this Motion is also available on the website of the Debtors' notice and claims agent, The Garden City Group, Inc., at http://www.gcginc.com/cases/ICBC.

### No Prior Request

43. No prior application for the relief requested herein has been made to this or any other court.

23492942v13

WHEREFORE, for the reasons set forth herein and in the First Day Declaration and the Augustine Declaration, the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and (b) grant such other and further relief as is just and proper.

Dated: September 13, 2011
New York, New York

/s/ *Pierre M. Sutton*
By: Pierre M. Sutton
Title: Chairman and Chief Executive Officer

23492942v13

# EXHIBIT A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INNER CITY MEDIA CORPORATION, *et al.*, | ) Case No. 11-13967 (SCC) |
| | ) |
| Debtors.[1] | ) Joint Administration Requested |
| | ) |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ROTHSCHILD AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS NUNC PRO TUNC TO THE RELIEF DATE

Upon the application (the *"Application"*)[2] of Inner City Media Corporation (*"ICBC Media"*) and its debtor affiliates, as debtors and debtors in possession (collectively, the *"Debtors"*), for entry of an order (this *"Order"*) authorizing the Debtors to employ and retain Rothschild Inc. (*"Rothschild"*) as their financial advisor and investment banker effective as of the date the Debtors filed their chapter 11 petitions, pursuant to sections 327 and 328(a) of title 11 of the United States Code (the *"Bankruptcy Code"*), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the *"Local Bankruptcy Rules"*); and upon the Declaration of Neil A. Augustine, a Senior Managing Director and co-head of the North America Debt Advisory and Restructuring Group of Rothschild, in support of the Application (the *"Augustine Declaration"*); and upon the Declaration of William C. Cooper Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: Inner City Media Corporation (5309), ICBC Broadcast Holdings, Inc. (2429), Inner City Broadcasting Corporation of Berkeley (5990), ICBC Broadcast Holdings -- CA, Inc. (5311), ICBC-NY, L.L.C. (8879), Urban Radio, L.L.C. (6747), Urban Radio I, L.L.C. (2649), Urban Radio II, L.L.C. (2701), Urban Radio III, L.L.C. (2747), Urban Radio IV., L.L.C. (3662), Urban Radio of Mississippi, L.L.C. (1154), and Urban Radio of South Carolina, L.L.C. (5231). The principal corporate location of the Debtors is: 3 Park Avenue, 40th Floor, New York, NY 10016. The service address for all of the Debtors is 3 Park Avenue, 40th Floor, New York, NY 10016.

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Application.

the Southern District of New York in Support of First-Day Pleadings (the *"First Day Declaration"*); and this Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this court pursuant to 28 U.S.C. § 1408; and the terms and conditions of Rothschild's employment, including but not limited to the Fee and Expense Structure set forth in the Engagement Letter and summarized in the Application, being reasonable as required by section 328(a) of the Bankruptcy Code; and Rothschild not holding or representing interests adverse to the Debtors' estates; Rothschild being a "disinterested person" as such term is defined under section 101(14), as modified by section 1107(b), of the Bankruptcy Code; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors and other parties in interest; and notice of the Application appearing adequate and appropriate under the circumstances; and this Court having found that no other or further notice need be provided; and this Court having reviewed the Application and having heard statements in support of the Application at a hearing held before this Court (the *"Hearing"*); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Application is granted as set forth herein, *nunc pro tunc* to the Relief Date.

2.     The Debtors are authorized pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Bankruptcy Rules 2014-1 and 2016-1 to employ and retain Rothschild as their financial advisor and investment banker in

2

accordance with the terms and conditions set forth in the Engagement Letter attached hereto as **Schedule 1** as modified by this Order, effective *nunc pro tunc* to the Relief Date, and to pay fees and reimburse expenses to Rothschild on the terms and at the times specified in the Engagement Letter.

3.  The amount of Rothschild's Completion Fee is hereby modified from $2,500,000 to $1,250,000.

4.  Notwithstanding anything to the contrary in the Engagement Letter, the Application or the Augustine Declaration, to the extent that the Debtors request Rothschild to perform any services other than (i) those detailed in the Engagement Letter in Section 1(a) through (l) and (ii) such other financial advisory and investment banking services directly related to services detailed in the Engagement Letter in Section 1(a) through (l) and provided without additional fees in these chapter 11 cases, the Debtors shall seek further application for an order of approval by the Court for any such additional services and such application shall set forth, in addition to the additional services to be performed, the additional fees sought to be paid.

5.  Rothschild shall apply any remaining amounts of its prepetition retainer (if any) as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the first order of the Court awarding fees and expenses to Rothschild.

6.  Rothschild shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable orders of this Court and the Guidelines promulgated by the Office of the United States Trustee.

7.  The Engagement Letter, including, without limitation, the Fee and Expense Structure and Indemnification Obligations, is incorporated herein by reference and approved in

3

all pursuant to section 328(a) and shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code. However, and notwithstanding anything to the contrary contained herein, the United States Trustee shall retain all rights to respond or object to Rothschild interim and final applications for compensation and reimbursement of expenses on all grounds including, but not limited to, reasonableness pursuant to section 330 of the Bankruptcy Code; and, in the event the United States Trustee objects, the Court retains the right to review the interim and final applications pursuant to section 330 of the Bankruptcy Code.

8.      Rothschild shall include in its fee applications, among other things, time records setting forth a summary description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in one-half hour increments but Rothschild shall not be required to provide or conform to any schedule of hourly rates.

9.      Pursuant to the terms of the Engagement Letter, Rothschild is entitled to reimbursement by the Debtors for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, the fees, disbursements and other charges of Rothschild's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise).

10.     All requests by Indemnified Parties for the payment of indemnification as set forth in the Engagement Letter shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall any

4

Indemnified Party be indemnified in the case of its own bad faith, breach of fiduciary duty (if any), gross negligence or willful misconduct (including self dealing).

11.     In no event shall Indemnified Parties be indemnified if the Debtors or a representative of the estate, asserts a claim for, and a court determines by final order that such claim arose out of, Rothschild's own bad faith, breach of fiduciary duty (if any), gross negligence or willful misconduct (including self dealing).

12.     In the event an Indemnified Party seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Rothschild's own applications, both interim and final, and such invoices and time records shall be subject to the United States Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

13.     None of the fees payable to Rothschild shall constitute a "bonus" or fee enhancement under applicable law.

14.     To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter and this Order, the terms of this Order shall govern.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

16.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such motion and the requirements of the local rules of the Court are satisfied by such notice.

23492942v13

17.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

19.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated:  New York, New York
September_____, 2011

                                        _____
                                        THE HONORABLE SHELLEY C. CHAPMAN
                                        UNITED STATES BANKRUPTCY JUDGE

23492942v13

# SCHEDULE 1

## Engagement Letter

**❊ⓇROTHSCHILD**

As of August 10, 2011

Mr. Pierre M. Sutton
Chairman and Chief Executive Officer
Inner City Media Corporation
3 Park Avenue
New York, NY 10016

Dear Mr. Sutton:

This letter (the "Agreement") will confirm the terms and conditions of the agreement between ICBC Broadcast Holdings, Inc. and Inner City Media Corporation (ICBC Broadcast Holdings, Inc. and Inner City Media Corporation, collectively with their direct and indirect subsidiaries, the "Company") and Rothschild Inc. ("Rothschild") regarding the retention of Rothschild as financial advisor and investment banker to the Company in connection with a possible restructuring of its businesses and/or certain liabilities of the Company.

Section 1   Services to be Rendered In connection with the formulation, analysis and implementation of various options for a restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to a Transaction (as defined below) or any series or combination of Transactions, Rothschild will perform the following services to the extent Rothschild deems necessary, appropriate and feasible and as requested by the Company:

(a)    identify and/or initiate potential Transactions;

(b)    review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(c)    evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(d)    assist the Company in soliciting financing to the extent the Company requires incremental financing and/or refinancing capital;

(e)    assist the Company and its other professionals in reviewing the terms of any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(f)    determine a range of values for the Company and any securities that the Company

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Neil Augustine
Senior Managing Director / Co-Head of North America Debt Advisory and Restructuring
Telephone 212 403-5411
Facsimile 646 390-8743
Email neil.augustine@rothschild.com

offers or proposes to offer in connection with a Transaction;

(g)     advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

(h)     solicit proposals and review and analyze any proposals the Company receives from third parties in connection with a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(i)     assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction or other transaction;

(j)     advise the Company with respect to, and attend, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(k)     in the event the Company determines to commence Chapter 11 cases, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below); and

(l)     render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company.

As used herein, the term "Transaction" shall mean any one or more of the following, whether pursuant to a plan of reorganization (a "Plan") confirmed in connection with any case or cases commenced by or against ICBC Broadcast Holdings, Inc., any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code") or otherwise: (a) any transaction or series of transactions that effects or proposes to effect material amendments to, or other material changes in, any of the Company's outstanding indebtedness or other liabilities (whether on or off balance sheet) including, without limitation, any exchange, tender offer, repurchase, equitization or forgiveness of any portion thereof; (b) (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) or any of its subsidiaries on a standalone basis or otherwise (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), through a credit bid or otherwise, whether in a single transaction, multiple transactions or a series of transactions, of (x) other than in

the ordinary course of business, any material portion of the assets or operations of the Company or (y) any outstanding or newly-issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company or any of its subsidiaries on a standalone basis or otherwise; (c) other than in the ordinary course of business, any acquisition, directly or indirectly, by the Company, whether in a single transaction, multiple transactions or a series of transactions, any outstanding or newly-issued shares of another person's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of another person, for the purpose of effecting a recapitalization or change of control of the other person; (d) any restructuring, reorganization, recapitalization, exchange offer, tender offer, refinancing or similar transaction, whether or not pursuant to a Plan; or (e) any transaction similar to any of the foregoing.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

<u>Section 2    Information Provided by the Company.</u>

(a)    The Company will cooperate with Rothschild and furnish to, or cause to be furnished to, Rothschild any and all information as Rothschild deems appropriate to enable Rothschild to render services hereunder (all such information being the "<u>Information</u>"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently the same; (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company, when delivered, to the best of its knowledge, will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact. The Company will promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild.

(b)    The Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically. The Company further acknowledges that although Rothschild will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be

444584

guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that Rothschild shall have no liability to the Company with respect to any error or omission arising from or in connection with: (i) the electronic communication of information to the Company; or (ii) the Company's reliance on such information.

Section 3   Application for Retention of Rothschild. In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Rothschild's retention by the Company under the terms of this Agreement (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild's counsel pursuant to Section 5 hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the Chapter 11 case was commenced, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use its best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon. Rothschild shall have no obligation to provide any services under this Agreement unless Rothschild's retention under the terms of this Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild in all respects.

Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Rothschild's retention, (b) any applicable fee and expense guidelines and/or orders and (c) any requirements governing interim and final fee applications. In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any.

In agreeing to seek Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothschild's general restructuring experience and

Inner City Media Corporation
August 10, 2011
Page 5

expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Retainer, the Monthly Fee, the Completion Fee and the New Capital Fee (each as defined below) are reasonable regardless of the number of hours expended by Rothschild's professionals in performance of the services provided hereunder.

Section 4    Fees of Rothschild.  As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash:

(a)    A retainer (the "Retainer") in an amount equal to $100,000, payable upon the execution of this Agreement, to be applied against the fees and expenses of Rothschild under this Agreement.

(b)    Commencing as of the date hereof, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $150,000 per month; provided, however, that beginning after the four-month anniversary of this Agreement, 50% of any and all future Monthly Fees paid by the Company shall be credited against the Completion Fee.  The initial Monthly Fee shall be payable by the Company upon the execution of this Agreement by the Company, and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each month.

(c)    A fee (the "Completion Fee") of $2,500,000, payable immediately upon the earlier of (i) the confirmation and effectiveness of a Plan and (ii) the closing of another Transaction.

(d)    A new capital fee (the "New Capital Fee" and together with the Monthly Fees and any Completion Fee, the "Fees") equal to (i) 1.0% of the face amount of any senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (ii) 2.0% of the face amount of any junior secured debt raised; (iii) 3.0% of the face amount of any senior or subordinated unsecured debt raised and (iv) 4.0% of any equity capital, or capital convertible into equity, raised, including, without limitation, equity underlying any warrants, purchase rights and similar contingent equity securities (each, a "New Capital Raise).  The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed.  For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company.  For the avoidance of doubt, the New Capital Fee relating to any warrants, purchase rights and similar contingent equity securities under clause (iv) shall be due and payable upon the exercise of such warrants, purchase rights or similar contingent equity securities. Notwithstanding anything contained herein, a New Capital Fee shall be payable

444584

only to the extent it is raised from a source that is outside of the Company's current capital structure, including without limitation, Inner City Broadcasting Corporation or any of its affiliates.

(e)     To the extent the Company requests that Rothschild perform additional services not contemplated by this Agreement, such additional fees as shall be mutually agreed upon by Rothschild and the Company, in writing, in advance.

The Company and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder.

Notwithstanding anything contained herein, the aggregate amount of Fees payable hereunder shall not exceed $4,000,000.

Section 5    Expenses. Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court). Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services. If a Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 5 upon presentation of an invoice or other similar documentation with reasonable detail.

Section 6    Indemnity. The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related persons. Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein. Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 7    Term. The term of Rothschild's engagement shall commence on the date hereof. This Agreement may be terminated by either the Company or Rothschild after ninety (90) days from the date hereof by providing thirty (30) days advance notice in writing. If terminated, (a) Rothschild shall be entitled to reimbursement of any and all reasonable expenses described in Section 5 and (b) Rothschild shall be entitled to payment of any fees which are due and owing to Rothschild upon the effective date of termination (including, without limitation, any additional Monthly Fees required by Section 4(b) hereof); provided, that the final Monthly Fee will be pro-rated for any incomplete monthly period of service. Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild

and certain related persons as provided in Exhibit A. Without limiting any of the foregoing, the Completion Fee and New Capital Fee(s) shall be payable in the event that (a) as applicable, a Transaction or a New Capital Raise is consummated at anytime prior to the expiration of one (1) year after the termination of this Agreement, or (b) a letter of intent or definitive agreement with respect thereto is executed at any time prior to one (1) year after such termination (which letter of intent or definitive agreement subsequently results in the consummation of a Transaction or New Capital Raise, as applicable, at any time). Without limiting any of the foregoing, if this Agreement is terminated and any warrants, purchase rights or similar contingent equity securities were issued during the term of this Agreement, the New Capital Fee shall be payable in the event that any such warrants, purchase rights or similar contingent equity securities are exercised at any time after such termination.

<u>Section 8  Miscellaneous.</u>

(a)  *Administrative Expense Priority.*  In a Bankruptcy Case of ICBC Broadcast Holdings, Inc. or any of its direct or indirect subsidiaries, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use its best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of Rothschild's fees and expenses contemplated hereby.

(b)  *Survival, Successors & Assigns.*  Sections 4 through 8 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns. The Company shall use its best efforts to cause any purchaser of all or substantially all of the Company's assets to assume the Company's obligations hereunder.

(c)  *Benefit of Agreement; No Reliance by Third Parties.*  The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other

purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild. Except as otherwise provided in this Agreement, any reference to Rothschild by the Company in a press release or other public document shall be submitted to Rothschild for its approval prior to the distribution or dissemination thereof, such approval not to be unreasonably withheld.

(d)     *Nature of Relationship.*  The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company.  The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including, without limitation, security holders, creditors or employees of the Company.

(e)     *Rothschild Affiliates.*  Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "<u>Affiliated Entities</u>").  None of the Affiliated Entities is being retained hereunder nor will any professionals or employees of the Affiliated Entities provide services to the Company in connection with the matters contemplated hereby.  The Affiliated Entities are involved in a wide range of investment banking and other activities. Rothschild can make no representation as to the "disinterestedness" (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities.  Information that is held by the Affiliated Entities will not for any purpose be taken into account in determining Rothschild's responsibilities to the Company hereunder.  None of the Affiliated Entities will have any duty to disclose to the Company or any other party, or utilize for the Company's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction or otherwise carrying on its business.

(f)     *Required Information.*  Since Federal law requires Rothschild to obtain, verify, and record information that identifies any entity not listed on the New York Stock Exchange, the American Stock Exchange or whose common stock or equity interests have not been designated as a National Market System security listed on the NASDAQ stock market that enters into a formal relationship with it, the Company agrees to provide Rothschild with its tax or other similar identification number and/or other identifying documents, as Rothschild may request, to enable it to comply with applicable law.  For your information, Rothschild may also screen the Company against various databases to verify its identity.

(g)     *Public Announcements.*  The Company acknowledges that Rothschild may at its option and expense, after announcement of a Transaction or a New Capital Raise, place announcements and advertisements or otherwise publicize the Transaction or the New Capital Raise in such financial and other newspapers and journals as it may choose, stating that

Rothschild acted as financial advisor to the Company in connection with such transaction. The Company further consents to Rothschild's public use or display of Company's logo, symbol or trademark as part of Rothschild's general marketing or promotional activities.

(h)   *CHOICE OF LAW: JURISDICTION.*   THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK.   THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS.   REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT.   BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT.   THE COMPANY CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT THE COMPANY'S CHAIRMAN AND CEO SHALL BE AUTHORIZED TO ACCEPT SERVICE ON ITS BEHALF.

(i)   *Waiver of Jury Trial.*  Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Transaction.  Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented, expressly or otherwise, that such party would not seek to enforce the provisions of this waiver.  Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(j)   *Entire Agreement.*  This Agreement, including the exhibit(s) hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein.  No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(k)     *Authority.* Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A and B attached hereto and the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent.

(l)     *Counterparts.* This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

(m)     *Notices.* Any notice given pursuant to, or relating to, this Agreement shall be in writing and shall be mailed or delivered by courier (a) if to the Company, at the address set forth above, Attn: Lois Wright, Executive Vice President and Corporate Counsel and (b) if to Rothschild, to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Neil A. Augustine, Senior Managing Director, with a copy to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Chairman and CEO.

If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this Agreement, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: _____

Neil A. Augustine
Senior Managing Director

Date: 8/20/11

Accepted and Agreed to as of
the date first written above on
behalf of itself and its direct
and indirect subsidiaries:

ICBC BROADCAST HOLDINGS, INC.

By: _____

Name: Pierre M. Sutton
Title: Chairman and Chief Executive Officer

Date: _____

INNER CITY MEDIA CORPORATION

By: _____

Name: Pierre M. Sutton
Title: Chairman and Chief Executive Officer

Date: _____

444584

<u>**Exhibit A**</u>

The Company shall indemnify and hold harmless Rothschild and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and each of such other persons, an "<u>Indemnified Party</u>" and, collectively, the "<u>Indemnified Parties</u>"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "<u>Losses</u>") (<u>a</u>) directly or indirectly related to or arising out of (<u>i</u>) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (<u>ii</u>) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or any Transaction or other transaction; or (<u>b</u>) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, <u>provided</u> that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party. If multiple claims are brought against an Indemnified Party, with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or award against such Indemnified Party shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or award expressly states that it, or any portion thereof, is based on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any legal or other fees, disbursements or expenses as they are incurred (<u>a</u>) in investigating, preparing, pursuing or settling any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "<u>Action</u>") and (<u>b</u>) in connection with enforcing such Indemnified Party's rights under this Agreement; <u>provided</u>, <u>however</u>, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (<u>a</u>) if the Company had actual notice of such Action or (<u>b</u>) unless and only to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses. The Company shall, if requested by Rothschild,

assume the defense of any such Action including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of Rothschild under this Agreement and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party in connection with any such advice, actions,

inactions or services. In the event the Company commences a Chapter 7 or Chapter 11 case, the Company shall use its best efforts to require, as a condition of the Company releasing from liability any creditor or other party-in-interest in the case, that such creditor or other party-in-interest release all Indemnified Parties from all claims or other liabilities directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to obtain such release with respect to the gross negligence, willful misconduct or fraud of any Indemnified Party.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.

# EXHIBIT B

## Declaration of Neil A. Augustine

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INNER CITY MEDIA CORPORATION, *et al.*, | ) Case No. 11-13967 (SCC) |
| | ) |
| Debtors.[1] | ) Joint Administration Requested |
| | ) |

## DECLARATION OF NEIL A. AUGUSTINE
## IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY
## OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION
## OF ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT
## BANKER TO THE DEBTORS NUNC PRO TUNC TO THE RELIEF DATE

Pursuant to Rule 2014(a) of the Bankruptcy Rules,[2] I, Neil A. Augustine, under penalty of perjury, declare as follows:

1.      I am a Senior Managing Director and co-head of the North America Debt Advisory and Restructuring Group of the investment banking and financial advisory firm Rothschild Inc. ("*Rothschild*"), which has its principal office at 1251 Avenue of the Americas, New York, New York 10020. I am authorized to execute this declaration on behalf of Rothschild. Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: Inner City Media Corporation (5309), ICBC Broadcast Holdings, Inc. (2429), Inner City Broadcasting Corporation of Berkeley (5990), ICBC Broadcast Holdings – CA, Inc. (5311), ICBC-NY, L.L.C. (8879), Urban Radio, L.L.C. (6747), Urban Radio I, L.L.C. (2649), Urban Radio II, L.L.C. (2701), Urban Radio III, L.L.C. (2747), Urban Radio IV., L.L.C. (3662), Urban Radio of Mississippi, L.L.C. (1154), and Urban Radio of South Carolina, L.L.C. (5231). The principal corporate location of the Debtors is 3 Park Avenue, 40th Floor, New York, NY 10016. The service address for all of the Debtors is 3 Park Avenue, 40th Floor, New York, NY 10016.

[2]     All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Application.

2.     This declaration is being submitted in connection with the proposed employment and retention of Rothschild as financial advisor and investment banker to the Debtors to perform services as set forth in their Application to retain Rothschild as Financial Advisor and Investment Banker, *nunc pro tunc* to the Relief Date.  I submit this Declaration in compliance with sections 105, 327, 328 and 1107(a) of the Bankruptcy Code and to provide the disclosure required under Rule 2014(a), 2016 and 5002 of the Bankruptcy Rules and Rule 2014-1 of the Local Rules.

## A.     Rothschild's Qualifications

3.     Rothschild has extensive experience and an excellent reputation in providing high quality financial advice and investment banking services to debtors in chapter 11 cases and other restructurings.

4.     Rothschild is a member of one of the world's leading independent investment banking groups, with more than forty offices in more than thirty countries.  Rothschild has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital raises and other financial advisory and investment banking services, and particular experience in providing high-quality financial advice to financially troubled companies.  Rothschild is an experienced bankruptcy and restructuring advisor to debtors in a variety of industries. Rothschild is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operational restructurings. Moreover, Rothschild is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

5.     Rothschild and its professionals have extensive experience working with financially troubled companies in the radio sector and a variety of other industries in complex financial restructurings, both out of court and in chapter 11 cases. Rothschild's professionals are providing or have provided financial advisory, investment banking and other services in

2

connection with the restructuring of numerous companies, including the following: *In re Sbarro Inc.*, 11-11527 (Bankr. S.D.N.Y. April 4, 2011), *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (Bankr. D. Del. Mar. 28, 2011); *In re Neenah Enters., Inc.*, Case No. 10-10360 (Bankr. D. Del. Feb. 3, 2010); *In re Blockbuster, Inc.*, Case No. 10-14997 (Bankr. S.D.N.Y. Nov. 2, 2010); *In re RHI Entm't, Inc.*, Case No. 10-16536 (Bankr. S.D.N.Y. Sept. 10, 2010); *In re Penton Business Media Holdings, Inc.*, Case No. 10-10689 (Bankr. S.D.N.Y. Mar. 5, 2010); *In re FairPoint Commc'n, Inc.*, Case No. 09-16335 (Bankr. S.D.N.Y. Jan. 11, 2010); *In re Trident Resources Corp.*, Case No. 09-13150 (Bankr. D. Del. Sept. 8, 2009); *In re Visteon Corp.*, Case No. 09-11786 (Bankr. D. Del. July 1, 2009); *In re Sun-Times Media Group, Inc.*, Case No. 09-11092 (Bankr. D. Del. May 11, 2009); *In re Milacron Inc.*, Case No. 09-11235 (Bankr. S.D. Ohio Apr. 6, 2009); *In re PPI Holdings, Inc.*, Case No. 08-13289 (Bankr. D. Del. Feb. 4, 2009); *In re Tronox Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Jan. 12, 2009); *In re Recycled Paper Greetings Inc.*, Case No. 09-10002 (Bankr. D. Del. Jan. 23, 2009); *In re Circuit City Stores, Inc.*, Case No. 08-35653 (Bankr. E.D. Va. Jan. 9, 2009); *In re VeraSun Energy Corp.*, Case No. 08-12606 (Bankr. D. Del. Jan. 2, 2009); *In re Motor Coach Indus. Int'l, Inc.*, Case No. 08-12136 (Bankr. D. Del. Oct. 16, 2008); *In re BHM Techs.*, Case No. 08-04413 (Bankr. W.D. Mich. July 25, 2008); *In re Hilex Poly Co. LLC*, Case No. 08-10890 (Bankr. D. Del. May 30, 2008); *In re Werner Holding Co. (DE), Inc.*, Case No. 06-10578 (Bankr. D. Del. June 12, 2006); *In re Delphi Corp.*, Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005); *In re Int'l Wire*, Case No. 04-11991 (Bankr. S.D.N.Y. July 1, 2004); *In re Solutia Inc.*, Case No. 03-17949 (Bankr. S.D.N.Y. Apr. 13, 2004); *In re WestPoint Stevens, Inc.*, Case No. 03-13532 (Bankr. S.D.N.Y. July, 22, 2003); *In re James River Coal Co.*, Case No. 03-04095 (Bankr. M.D. Tenn. May 23, 2003); *In re Superior TeleCom Inc.*, Case No. 03-10607 (Bankr. D. Del. Apr. 10, 2003); *In re Viasystems Group, Inc.*,

3

Case No. 02-14867 (Bankr. S.D.N.Y. Nov. 21, 2002); *In re Guilford Mills, Inc.*, Case No. 02-40667 (Bankr. S.D.N.Y. June 26, 2002).

6. The resources, capabilities and experience of Rothschild in advising the Debtors are crucial to the Debtors' chapter 11 strategy. An experienced financial advisor and investment banker fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. The Debtors require the services of a capable and experienced financial advisor and investment banker such as Rothschild.

7. Since its retention as of August 10, 2011 and up to the Relief Date, Rothschild has become familiar with the Debtors and their business, including the Debtors' creditors, financial affairs, debt structure, operations and related matters. Having worked with the Debtors' management and their other advisors in connection with the Debtors' restructuring efforts, Rothschild has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases. Accordingly, Rothschild is both well qualified and uniquely able to represent the Debtors in the chapter 11 cases in an efficient and timely manner.

8. Rothschild believes that the services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Specifically, Rothschild will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

**B. Professional Compensation**

9. In consideration of the services to be provided by Rothschild, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to compensate Rothschild in accordance with the terms and conditions of the Engagement Letter,

23492942v13

which provides a compensation structure (the *Fee and Expense Structure*) that provides in relevant part as follows:[3]

(a) <u>Monthly Fees</u>:  Whether or not a Transaction is proposed or consummated, an advisory fee (the *"Monthly Fee"*) of $150,000 per month, provided, however, that beginning after the four-month anniversary of this Agreement, 50% of any and all future Monthly Fees paid by the Debtors shall be credited against the Completion Fee.

(b) <u>Completion Fee</u>:  A fee (the *"Completion Fee"*) of $2,500,000, payable immediately upon the earlier of (i) the confirmation and effectiveness of a Plan and (ii) the closing of another Transaction.

(c) <u>New Capital Fee</u>  A new capital fee (the *"New Capital Fee,"* and together with the Monthly Fees and any Completion Fee, the *"Fees"*) equal to (i) 1.0% of the face amount of any senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (ii) 2.0% of the face amount of any junior secured debt raised; (iii) 3.0% of the face amount of any senior or subordinated unsecured debt raised and (iv) 4.0% of any equity capital, or capital convertible into equity, raised, including, without limitation, equity underlying any warrants, purchase rights and similar contingent equity securities.  The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed.  The New Capital Fee shall be payable only to the extent it is raised from a source that is outside of the Company's (as defined in the Engagement Letter) current capital structure, including without limitation, Inner City Broadcasting Corporation or any of its affiliates.

(d) <u>Reimbursement of Expenses</u>:  In addition to the Fees, regardless of whether any Transaction occurs, the Debtors shall promptly reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement, and the enforcement of this Agreement, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court). Reasonable expenses also include, but are not limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services.

(e) <u>Fee Cap:</u>  The aggregate amount of Fees shall not exceed $4,000,000.

---

[3]  The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only.  In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

5

10.     Rothschild understands that the Debtors have shared a draft of the Application with the Petitioning Creditors, and Rothschild and the Debtors have discussed Rothschild's retention with the Petitioning Creditors. The Petitioning Creditors consented to and agreed to support the entry of the Proposed Order, which, among other things, (i) modifies the Completion Fee to $1,250,000 and (ii) approves the Fee and Expense Structure pursuant to section 328 of the Bankruptcy Code. Rothschild agreed, and Rothschild understands that the Debtors agreed, to modification of the Completion Fee based upon such consent and agreement by the Petitioning Creditors.

11.     Rothschild believes that the Fee and Expense Structure is comparable to those generally charged by financial advisors and investment bankers of similar stature to Rothschild for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed, monthly fee, and a contingency amount, which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and Rothschild in the Engagement Letter.

12.     The Fee and Expense Structure summarized above and described fully in the Engagement Letter is consistent with Rothschild's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out-of-court, involving the services to be provided in connection with these chapter 11 cases. The Fee and Expense Structure is consistent with and typical of arrangements entered into by Rothschild and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtors. Rothschild and the Debtors believe that the Fee and Expense Structure is both reasonable and market-based.

6

13.     To induce Rothschild to represent the Debtors, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Rothschild has undertaken and expects to undertake and to account for the potential for an unfavorable outcome as a result of factors outside of Rothschild's control.

14.     The Debtors and Rothschild negotiated the Fee and Expense Structure to function as and be an interrelated, integrated unit, in correspondence with Rothschild's services, which Rothschild renders not in parts, but as a whole. It would be contrary to the intention of Rothschild and the Debtors for any isolated component of the entire Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Rothschild's services. Instead, the Debtors and Rothschild intend that Rothschild's services be considered as a whole that is to be compensated by the Fee and Expense Structure in its entirety.

15.     Rothschild's restructuring expertise, as well as its broadcasting industry expertise, capital markets knowledge, financing skills and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Rothschild's engagement hereunder, were important factors in determining the Fee and Expense Structure. The ultimate benefit to the Debtors derived from the services provided by Rothschild hereunder cannot be measured by a reference to the number of hours expended by Rothschild's professionals.

16.     The Fee and Expense Structure has been agreed upon in anticipation that a substantial commitment of professional time and effort will be required of Rothschild and its professionals and in light of the fact that (i) such commitment may foreclose other opportunities for Rothschild and (ii) the actual time and commitment required of Rothschild and its professionals to perform its services may vary substantially from week to week and month to month, creating "peak load" issues for Rothschild.

7

## C.  Record Keeping

17.     It is not the general practice of financial advisory and investment banking firms, including Rothschild, to keep detailed time records similar to those customarily kept by attorneys.  Because Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour (0.10) increments or provide or conform to a schedule of hourly rates for its professionals, Rothschild should, pursuant to Local Rule 2016-2(g), be excused from compliance with such requirements and should only be required to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

18.     Rothschild will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  Rothschild's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter, in accordance with the procedures established by the Court.

19.     Rothschild has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## D.  Indemnification Provisions

20.     As part of the overall compensation payable to Rothschild under the terms of the Engagement Letter, and as more fully described in **Exhibit A** thereto, the Debtors have agreed to certain indemnification and contribution obligations as described in the Engagement Letter and **Exhibit A** thereto (the *"Indemnification Obligations"*).

21.     The indemnification provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for financial advisors and investment bankers such as Rothschild for proceedings both out of court and in chapter 11.  The terms of the Engagement

Letter including the Indemnification Provisions were fully negotiated between the Debtors and Rothschild at arm's-length and in good faith.

## E.  Rothschild's Disinterestedness

22.    In connection with its proposed retention by the Debtors in these chapter 11 cases, Rothschild undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, Rothschild obtained from the Debtors and/or their representatives the names of such individuals and entities as may be parties in interest in these chapter 11 cases that are listed on **Schedule 2** annexed hereto (the *"Potential Parties in Interest"*).  Rothschild's knowledge of potential parties in interest is limited to such Potential Parties in Interest as have been disclosed to it by the Debtors, and Rothschild neither searched connections with nor makes any representations as to any entities not disclosed to Rothschild by the Debtors.

23.    To the best of my knowledge and belief, Rothschild has not represented any Potential Parties in Interest in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtors in matters relating to these chapter 11 cases except as set forth herein and in **Schedule 3** attached hereto.

24.    To the best of my knowledge, no individual assignment described in Schedule 3 accounts for more than one percent of Rothschild's gross annual revenue.

25.    During the ninety days before the Relief Date, the Debtors paid Rothschild $300,000 in fees and expenses on account of services rendered prior to the Relief Date, inclusive of the retainer, in the amount of $100,000, which was fully applied following this Court's direction.  Otherwise, Rothschild did not receive any payments from the Debtors during the

ninety days preceding the Relief Date. As of the Relief Date, Rothschild does not hold a prepetition claim against the Debtors for services rendered.

26. Rothschild provides financial advice and investment banking services to an array of clients in the areas of restructuring and distressed debt. As a result, Rothschild has represented, and may in the future represent, certain Potential Parties in Interest in matters unrelated to these chapter 11 cases, either individually or as part of representation of a committee of creditors or interest holders. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these representations are adverse to the Debtors' interests.

27. To the best of my knowledge and belief, neither Rothschild nor I, nor any other employee of Rothschild that will work on the Debtors' engagement, has any connection with or holds any interest adverse to the Debtors, their estates or the Potential Parties in Interest, except (i) as set forth in Schedule 3 and (ii) as otherwise set forth below:

(a) Before the commencement of these cases, Rothschild rendered prepetition services to the Debtors. As noted above, although Rothschild's records indicate that it is not owed any amounts in respect of prepetition services provided to the Debtors, it is possible that certain expenses that were incurred by Rothschild, and that are reimbursable under the terms of the Engagement Letter, were not yet reflected on Rothschild's books and records as of the Relief Date. Upon entry of the Order approving the Application, Rothschild will waive any claim for such unreimbursed expenses in excess of amounts paid to Rothschild pre-relief.

(b) Rothschild is a large investment banking firm and has likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct business with the Debtors, and who may be creditors of the Debtors. To the best of my knowledge, information and belief, Rothschild's services to these parties were and are wholly unrelated to the Debtors, their estates or these chapter 11 cases.

(c) As part of its practice, Rothschild appears in numerous cases, proceedings and transactions involving many different professionals (including Akin Gump Strauss Hauer & Feld LLP, the Debtors' proposed counsel), some of which may represent claimants and parties in interest in the Debtors' chapter 11 cases. Furthermore, Rothschild has in the past and will likely in the future be working

10

with or against other professionals involved in these cases in matters unrelated to these cases. Based on my current knowledge of the professionals involved, and to the best of my knowledge and information, none of these business relationships represents an interest materially adverse to the Debtors herein in matters upon which Rothschild is to be engaged.

(d)     Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the *"Affiliated Entities"*). However, none of the Affiliated Entities is being retained in connection with this engagement and none of the professionals or employees of the Affiliated Entities will provide services to the Debtors in connection with this engagement. None of the professionals or employees of Rothschild has discussed or will discuss the Debtors' cases with any professional or employee of the Affiliated Entities. Thus, there has not been and will not be any flow of information between Rothschild and any Affiliated Entity with respect to any matter pertaining to the Debtors or these chapter 11 cases. Rothschild can make no representation as to the disinterestedness of the professionals or employees of the Affiliated Entities in respect of the Debtors' chapter 11 cases.

28.     To the best of my knowledge, information, and belief, except as described herein, insofar as I have been able to ascertain after reasonable inquiry, Rothschild has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, the chapter 11 cases. If Rothschild's proposed retention by the Debtors is approved by this Court, Rothschild will not accept any engagement or perform any service for any entity or person other than the Debtors in the chapter 11 cases. Rothschild will, however, continue to provide professional service to entities or persons that may be creditors of the Debtors or parties in interest in the chapter 11 cases; *provided that* such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

29.     I am not related or connected to and, to the best of my knowledge after reasonable inquiry, no other professional of Rothschild who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the Southern District of New York, any of the District Judges for the Southern District of New York, the United States Trustee for the

Southern District of New York or any employee in the Office of the United States Trustee for the Southern District of New York.

30.     To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, none of the employees of Rothschild working on this engagement on the Debtors' behalf has had, or will have in the future, direct contact concerning the chapter 11 cases with the Debtors' creditors, other parties in interest, the United States Trustee or anyone employed in the Office of the United States Trustee other than in connection with performing financial advisory and investment banking services on behalf of the Debtors.

31.     To the best of my knowledge, Rothschild has no agreement with any other entity to share with such entity any compensation received by Rothschild in connection with the Debtors' bankruptcy cases.

32.     Accordingly, except as otherwise set forth herein, insofar as I have been able to determine after reasonable inquiry, none of Rothschild, I, nor any employee of Rothschild who will work on this engagement holds or represents any interest adverse to the Debtors or their estates, and Rothschild is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by section 1107(b), in that Rothschild, and its professionals and employees who will work on the engagement:

(e)     are not creditors, equity security holders, or insiders of the Debtors;

(f)     were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer or employee of the Debtors; and

(g)     do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

33.     If Rothschild discovers additional information that requires disclosure, Rothschild promptly will file a supplemental disclosure with the Court as required by Bankruptcy Rule 2014.

*[The remainder of this page is intentionally blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
September 13, 2011

/s/ *Neil A. Augustine*
_____
Neil A. Augustine
Senior Managing Director and co-head of the
North America Debt Advisory and
Restructuring Group, Rothschild Inc.

23492942v13

**Schedule 1 to the Declaration**

**Engagement Letter**

**米R ROTHSCHILD**

As of August 10, 2011

Mr. Pierre M. Sutton
Chairman and Chief Executive Officer
Inner City Media Corporation
3 Park Avenue
New York, NY 10016

Dear Mr. Sutton:

This letter (the "Agreement") will confirm the terms and conditions of the agreement between ICBC Broadcast Holdings, Inc. and Inner City Media Corporation (ICBC Broadcast Holdings, Inc. and Inner City Media Corporation, collectively with their direct and indirect subsidiaries, the "Company") and Rothschild Inc. ("Rothschild") regarding the retention of Rothschild as financial advisor and investment banker to the Company in connection with a possible restructuring of its businesses and/or certain liabilities of the Company.

Section 1    Services to be Rendered In connection with the formulation, analysis and implementation of various options for a restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to a Transaction (as defined below) or any series or combination of Transactions, Rothschild will perform the following services to the extent Rothschild deems necessary, appropriate and feasible and as requested by the Company:

(a)     identify and/or initiate potential Transactions;

(b)     review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(c)     evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(d)     assist the Company in soliciting financing to the extent the Company requires incremental financing and/or refinancing capital;

(e)     assist the Company and its other professionals in reviewing the terms of any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(f)     determine a range of values for the Company and any securities that the Company

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Neil Augustine
Senior Managing Director / Co-Head of North America Debt Advisory and Restructuring
Telephone 212 403-5411
Facsimile 646 390-8743
Email neil.augustine@rothschild.com

offers or proposes to offer in connection with a Transaction;

(g)     advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

(h)     solicit proposals and review and analyze any proposals the Company receives from third parties in connection with a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(i)     assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction or other transaction;

(j)     advise the Company with respect to, and attend, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(k)     in the event the Company determines to commence Chapter 11 cases, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below); and

(l)     render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company.

As used herein, the term "Transaction" shall mean any one or more of the following, whether pursuant to a plan of reorganization (a "Plan") confirmed in connection with any case or cases commenced by or against ICBC Broadcast Holdings, Inc., any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code") or otherwise: (a) any transaction or series of transactions that effects or proposes to effect material amendments to, or other material changes in, any of the Company's outstanding indebtedness or other liabilities (whether on or off balance sheet) including, without limitation, any exchange, tender offer, repurchase, equitization or forgiveness of any portion thereof; (b) (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) or any of its subsidiaries on a standalone basis or otherwise (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), through a credit bid or otherwise, whether in a single transaction, multiple transactions or a series of transactions, of (x) other than in

Inner City Media Corporation
August 10, 2011
Page 3

the ordinary course of business, any material portion of the assets or operations of the Company or (y) any outstanding or newly-issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company or any of its subsidiaries on a standalone basis or otherwise; (c) other than in the ordinary course of business, any acquisition, directly or indirectly, by the Company, whether in a single transaction, multiple transactions or a series of transactions, any outstanding or newly-issued shares of another person's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of another person, for the purpose of effecting a recapitalization or change of control of the other person; (d) any restructuring, reorganization, recapitalization, exchange offer, tender offer, refinancing or similar transaction, whether or not pursuant to a Plan; or (e) any transaction similar to any of the foregoing.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

Section 2    Information Provided by the Company.

(a)    The Company will cooperate with Rothschild and furnish to, or cause to be furnished to, Rothschild any and all information as Rothschild deems appropriate to enable Rothschild to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently the same; (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company, when delivered, to the best of its knowledge, will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact. The Company will promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild.

(b)    The Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically. The Company further acknowledges that although Rothschild will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be

guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that Rothschild shall have no liability to the Company with respect to any error or omission arising from or in connection with: (i) the electronic communication of information to the Company; or (ii) the Company's reliance on such information.

Section 3    Application for Retention of Rothschild. In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Rothschild's retention by the Company under the terms of this Agreement (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild's counsel pursuant to Section 5 hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the Chapter 11 case was commenced, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use its best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon. Rothschild shall have no obligation to provide any services under this Agreement unless Rothschild's retention under the terms of this Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild in all respects.

Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Rothschild's retention, (b) any applicable fee and expense guidelines and/or orders and (c) any requirements governing interim and final fee applications. In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any.

In agreeing to seek Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothschild's general restructuring experience and

444584

expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Retainer, the Monthly Fee, the Completion Fee and the New Capital Fee (each as defined below) are reasonable regardless of the number of hours expended by Rothschild's professionals in performance of the services provided hereunder.

Section 4   Fees of Rothschild. As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash:

(a)   A retainer (the "Retainer") in an amount equal to $100,000, payable upon the execution of this Agreement, to be applied against the fees and expenses of Rothschild under this Agreement.

(b)   Commencing as of the date hereof, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $150,000 per month; provided, however, that beginning after the four-month anniversary of this Agreement, 50% of any and all future Monthly Fees paid by the Company shall be credited against the Completion Fee. The initial Monthly Fee shall be payable by the Company upon the execution of this Agreement by the Company, and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each month.

(c)   A fee (the "Completion Fee") of $2,500,000, payable immediately upon the earlier of (i) the confirmation and effectiveness of a Plan and (ii) the closing of another Transaction.

(d)   A new capital fee (the "New Capital Fee" and together with the Monthly Fees and any Completion Fee, the "Fees") equal to (i) 1.0% of the face amount of any senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (ii) 2.0% of the face amount of any junior secured debt raised; (iii) 3.0% of the face amount of any senior or subordinated unsecured debt raised and (iv) 4.0% of any equity capital, or capital convertible into equity, raised, including, without limitation, equity underlying any warrants, purchase rights and similar contingent equity securities (each, a "New Capital Raise). The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company. For the avoidance of doubt, the New Capital Fee relating to any warrants, purchase rights and similar contingent equity securities under clause (iv) shall be due and payable upon the exercise of such warrants, purchase rights or similar contingent equity securities. Notwithstanding anything contained herein, a New Capital Fee shall be payable

only to the extent it is raised from a source that is outside of the Company's current capital structure, including without limitation, Inner City Broadcasting Corporation or any of its affiliates.

    (e)    To the extent the Company requests that Rothschild perform additional services not contemplated by this Agreement, such additional fees as shall be mutually agreed upon by Rothschild and the Company, in writing, in advance.

    The Company and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder.

    Notwithstanding anything contained herein, the aggregate amount of Fees payable hereunder shall not exceed $4,000,000.

    Section 5   Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court). Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services. If a Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 5 upon presentation of an invoice or other similar documentation with reasonable detail.

    Section 6   Indemnity.  The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related persons. Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein. Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

    Section 7   Term.  The term of Rothschild's engagement shall commence on the date hereof. This Agreement may be terminated by either the Company or Rothschild after ninety (90) days from the date hereof by providing thirty (30) days advance notice in writing. If terminated, (a) Rothschild shall be entitled to reimbursement of any and all reasonable expenses described in Section 5 and (b) Rothschild shall be entitled to payment of any fees which are due and owing to Rothschild upon the effective date of termination (including, without limitation, any additional Monthly Fees required by Section 4(b) hereof); provided, that the final Monthly Fee will be pro-rated for any incomplete monthly period of service. Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild

and certain related persons as provided in Exhibit A. Without limiting any of the foregoing, the Completion Fee and New Capital Fee(s) shall be payable in the event that (a) as applicable, a Transaction or a New Capital Raise is consummated at anytime prior to the expiration of one (1) year after the termination of this Agreement, or (b) a letter of intent or definitive agreement with respect thereto is executed at any time prior to one (1) year after such termination (which letter of intent or definitive agreement subsequently results in the consummation of a Transaction or New Capital Raise, as applicable, at any time). Without limiting any of the foregoing, if this Agreement is terminated and any warrants, purchase rights or similar contingent equity securities were issued during the term of this Agreement, the New Capital Fee shall be payable in the event that any such warrants, purchase rights or similar contingent equity securities are exercised at any time after such termination.

<u>Section 8  Miscellaneous.</u>

(a)  *Administrative Expense Priority.*  In a Bankruptcy Case of ICBC Broadcast Holdings, Inc. or any of its direct or indirect subsidiaries, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use its best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of Rothschild's fees and expenses contemplated hereby.

(b)  *Survival, Successors & Assigns.*  Sections 4 through 8 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns. The Company shall use its best efforts to cause any purchaser of all or substantially all of the Company's assets to assume the Company's obligations hereunder.

(c)  *Benefit of Agreement; No Reliance by Third Parties.*  The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other

444584

purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild. Except as otherwise provided in this Agreement, any reference to Rothschild by the Company in a press release or other public document shall be submitted to Rothschild for its approval prior to the distribution or dissemination thereof, such approval not to be unreasonably withheld.

(d)     *Nature of Relationship*. The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including, without limitation, security holders, creditors or employees of the Company.

(e)     *Rothschild Affiliates*. Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities"). None of the Affiliated Entities is being retained hereunder nor will any professionals or employees of the Affiliated Entities provide services to the Company in connection with the matters contemplated hereby. The Affiliated Entities are involved in a wide range of investment banking and other activities. Rothschild can make no representation as to the "disinterestedness" (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities. Information that is held by the Affiliated Entities will not for any purpose be taken into account in determining Rothschild's responsibilities to the Company hereunder. None of the Affiliated Entities will have any duty to disclose to the Company or any other party, or utilize for the Company's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction or otherwise carrying on its business.

(f)     *Required Information*. Since Federal law requires Rothschild to obtain, verify, and record information that identifies any entity not listed on the New York Stock Exchange, the American Stock Exchange or whose common stock or equity interests have not been designated as a National Market System security listed on the NASDAQ stock market that enters into a formal relationship with it, the Company agrees to provide Rothschild with its tax or other similar identification number and/or other identifying documents, as Rothschild may request, to enable it to comply with applicable law. For your information, Rothschild may also screen the Company against various databases to verify its identity.

(g)     *Public Announcements*. The Company acknowledges that Rothschild may at its option and expense, after announcement of a Transaction or a New Capital Raise, place announcements and advertisements or otherwise publicize the Transaction or the New Capital Raise in such financial and other newspapers and journals as it may choose, stating that

Rothschild acted as financial advisor to the Company in connection with such transaction. The Company further consents to Rothschild's public use or display of Company's logo, symbol or trademark as part of Rothschild's general marketing or promotional activities.

(h) *CHOICE OF LAW: JURISDICTION.* THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT THE COMPANY'S CHAIRMAN AND CEO SHALL BE AUTHORIZED TO ACCEPT SERVICE ON ITS BEHALF.

(i) *Waiver of Jury Trial.* Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented, expressly or otherwise, that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(j) *Entire Agreement.* This Agreement, including the exhibit(s) hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

    (k)    *Authority.* Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A and B attached hereto and the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent.

    (l)    *Counterparts.* This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

    (m)    *Notices.* Any notice given pursuant to, or relating to, this Agreement shall be in writing and shall be mailed or delivered by courier (a) if to the Company, at the address set forth above, Attn: Lois Wright, Executive Vice President and Corporate Counsel and (b) if to Rothschild, to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Neil A. Augustine, Senior Managing Director, with a copy to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Chairman and CEO.

If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this Agreement, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: _____
Neil A. Augustine
Senior Managing Director

Date: 8/20/11

Accepted and Agreed to as of
the date first written above on
behalf of itself and its direct
and indirect subsidiaries:

ICBC BROADCAST HOLDINGS, INC.

By: _____
Name: Pierre M. Sutton
Title: Chairman and Chief Executive Officer

Date:_____

INNER CITY MEDIA CORPORATION

By: _____
Name: Pierre M. Sutton
Title: Chairman and Chief Executive Officer

Date:_____

444584

## Exhibit A

The Company shall indemnify and hold harmless Rothschild and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and each of such other persons, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or any Transaction or other transaction; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party. If multiple claims are brought against an Indemnified Party, with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or award against such Indemnified Party shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or award expressly states that it, or any portion thereof, is based on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing, pursuing or settling any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (a) if the Company had actual notice of such Action or (b) unless and only to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses. The Company shall, if requested by Rothschild,

assume the defense of any such Action including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of Rothschild under this Agreement and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party in connection with any such advice, actions,

inactions or services. In the event the Company commences a Chapter 7 or Chapter 11 case, the Company shall use its best efforts to require, as a condition of the Company releasing from liability any creditor or other party-in-interest in the case, that such creditor or other party-in-interest release all Indemnified Parties from all claims or other liabilities directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to obtain such release with respect to the gross negligence, willful misconduct or fraud of any Indemnified Party.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.

**Schedule 2 to the Declaration**

**Potential Parties in Interest**

## Debtors and Subsidiaries

Inner City Media Corporation
ICBC Broadcasting Holdings, Inc.
ICBC-NY, LLC
Inner City Broadcastings of Berkeley
ICBC Broadcastings Holdings-CA, Inc.
Urban Radio of South Carolina, L.L.C.
Urban Radio of Mississippi, L.L.C.
Urban Radio, L.L.C.
Urban Radio I. L.L.C,
Urban Radio II, L.L.C.
Urban Radio III, L.L.C.
Urban Radio IV, L.L.C.

## Former and Current Officers and Directors

Pierre M. Sutton
Charles M. Warfield, Jr.
Skip Finley
Lois E. Wright
William Cooper
Irene Lee
Roscoe Brown
Steven Scheiwe
Eugene Davis
Timothy Bernlohr
Mary Reed
Harold Jackson
Carlos Russell
Oliver C. Sutton, II
Cheryl Sutton

## Equity Security Holders

### Inner City Media Broadcasting Corporation

Alta Communications IX, L.P.
Alta Communications IX-B, L.P.
Alta IX Associates, LLC
Mercury Capital Partners III, L.P.
Inner City Broadcasting Corporation

### ICBC Broadcasting Holdings, Inc.

Inner City Media Corporation

<u>ICBC-NY, L.L.C.</u>

ICBC Broadcast Holdings, Inc.

<u>Inner City Broadcasting of Berkeley</u>

ICBC Broadcast Holdings, Inc.

<u>ICBC Broadcast Holdings-CA, Inc.</u>

Inner City Broadcasting Corporation of Berkeley

<u>Urban Radio of South Carolina, L.L.C.</u>

Urban Radio, L.L.C.

<u>Urban Radio of Mississippi, L.L.C.</u>

Urban Radio, L.L.C.

<u>Urban Radio, L.L.C.</u>

ICBC Broadcast Holdings, Inc.

<u>Urban Radio I, L.L.C.</u>

Urban Radio, L.L.C.

<u>Urban Radio II, L.L.C.</u>

Urban Radio, L.L.C.

<u>Urban Radio III, L.L.C.</u>

Urban Radio, L.L.C.

<u>Urban Radio IV, L.L.C.</u>

Urban Radio, L.L.C.


**<u>Largest 30 Unsecured Creditors</u>**

Skadden Arps
Air America Radio
Guardian
Eastman Radio
Meyer Suozzi
Arbitron
Sound Exchange
Holland & Knight
American Express
In-Language
Out of Bounds
ASCAP
AFTRA Pension and Welfare - NY & CA
Waters, McPherson, McNeil, P.C.
Nixon Peabody
Verizon
PSE&G
AndoMedia
Research Director
Hipcricket
Canon Business Solutions
Miller Kaplan
Broadcast Music Inc.
Gray Communications
Premiere Radio Networks
Fitch Even
Federal Express

## Secured Creditors

Yucaipa Corporate Initiatives Fund II, L.P.
Yucaipa Corporate Initiatives (Parallel) Fund II, L.P.
Fortress Credit Funding I, LP
Fortress Credit Funding II, LP
Drawbridge Special Opportunities Fund Ltd.
ICBC CF, LLC

## Insurance Companies

Guardian Life Insurance Corporation of America

3

Premium Assignment Corporation
Granite State Insurance
Mt. Hawley Insurance
Massachusetts Bay Insurance
Hanover Insurance
NYS Insurance Co.
Chartis Insurance Co.
Axis Insurance Company
Travelers Insurance Company

## Utilities

Alltel
AT&T
AT&T Mobility
Birch Communications
Black River Electric Cooperative Inc.
Blossman Gas
Centerpoint Energy – ENTEX
City of Columbia Customer Service
Cogent Communications, Inc.
Comcast
Comcast Cable
Comporium
Deltacom 1058
DJJ Technologies
Ebmud
Entergy
Farmers Telephone, Inc.
Intermedia
Inter Tech Media
Level 3 Communications, LLC
Megapath
Mid-Carolina Electric
PG&E
PSE&G Co,
South Carolina Electric & Gas
Southernpine Electric Power Association
Spirit Telecom
Sprint
TEC
TNCI
Township of Lynhurst Water Department
Tri-County Electric Cooperative
TW Telecom
United Energy Distributors, Inc.

USA Mobility Wireless, Inc.
Verizon Business
Verizon Communications
Verizon Wireless
Windstream

**Landlords**

Three Park Avenue Building Co, L.P.
Empire State Building Company, L.L.C.
RREEF Management Company
American Tower Corporation
Pritam Grewal
Sukmander Dhaliwal
City of San Jose, CA
Mt. Diablo Group
Clear  Channel Communications, Inc.
Syncom Incorporated
Kahn Family, LLC
Guignard Partnership
Antley Broadcasting
Morrison Street, LLC
SpectraSite Communications, Inc.
Capstarv Radio Corporation
Clear Channel Communications, Inc.
Backyard Broadcasting Mississippi, LLC
City of Pearl, Mississippi

**Regulatory Agencies**

Internal Revenue Service
Securities and Exchange Commission
Federal Communications Commission

**Taxing Authorities**

New York City Department of Finance
State of New York
Township of Lyndhurst Tax Collector
Internal Revenue Service
State of New Jersey
City of Philadelphia
State Board of Collections (California)
Donald R. White Tax Collector – Alameda County, CA
San Francisco Tax Collector

5

Sandie Arnott Tax Collector –Redwood City, CA
Santa Clara County (CA)
State of California
Sumter County Treasury
Richland County Treasurers Office
County of Lexington (NC)
State of South Carolina
State of Mississippi
MS Department of Employment Security
City of Ridgeland (MS)
Hinds County Tax Collector (MS)
Madison County Tax Collector (MS)
Rankin County Tax Collector (MS)
South Carolina  Department of Revenue
Delaware Secretary of State
Franchise Tax Board (CA)
Mississippi Tax Commission

**Debtors' Proposed Professionals**

Rothschild Inc.
The Garden City Group

**Key Staff Members of the Office of the United States Trustee**
**For the Southern District of New York**

Tracy Hope Davis
Vincent Abriano
Linda A. Riffkin
Catletha Brooks
Maria Catapano
Danny A. Choy
Stephanie B. Crowder
Elizabetta C. Dub
Marilyn Felton
Myrna R. Fields
Elizabeth Gasparini
Susan Golden
Nadkarni Joseph
Nazar Khodorovsky

Marylou Martin
Anna M. Martinez
Brian S. Masumoto
Ercilia A. Mendoza
Mary V. Moroney
Richard C. Morrissey
Serene Nakano
Savitri Nguyen
Andrea B. Schwartz
Paul K. Schwartzberg
Sylvester Sharp
Andy Velez-Rivera
Greg M. Zipes

23492942v13

**Schedule 3 to the Declaration**

**Relationships With Potential Parties in Interest**

.

| Inner City Media Corporation | | |
|---|---|---|
| Source: Interested Party List 9/2/2011 | | |
| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
| AT&T; AT&T Mobility | AT&T | Current Rothschild client on matters unrelated to Inner City Media Corporation. |
| American Express Company | American Express Company | Rothschild Vendor. |
| American Tower Corporation | American Tower Corporation | Former Rothschild client on matters unrelated to Inner City Media Corporation. |
| Automatic Data Processing (ADP) | Automatic Data Processing | Client pitches by Rothschild on matters unrelated to Inner City Media Corporation. |
| Timothy Bernlohr | Timothy Bernlohr | In matters unrelated to these cases, Rothschild has in the past and may in the future be working with or against companies of which Mr. Bernlohr was or is a director. |
| Centerpoint Energy-Entex | CenterPoint Energy Inc. | Client pitches by Rothschild on matters unrelated to Inner City Media Corporation. |
| Chartis Insurance Co. | Chartis Insurance Co. | Rothschild Vendor. |
| Cogent Communications, Inc. | Cogent Communications, Inc. | Rothschild Vendor. |
| Deloitte & Touche Tax | Deloitte & Touche | Rothschild Vendor. |
| Entergy | Entergy Corporation | Rothschild was involved in a transaction unrelated to Inner City Media Corporation where Entergy Corporation was an interested party. |
| Eugene Davis | Eugene Davis | In matters unrelated to these cases, Rothschild has in the past and may in the future be working with or against companies of which Mr. Davis was or is a director. |
| Federal Communications Commission | Federal Communications Commission | Former Rothschild client on matters unrelated to Inner City Media Corporation. |
| Federal Express | Federal Express | Rothschild Vendor. |
| Guardian; Guardian Life Insurance Company of America | Guardian Insurance | Rothschild Vendor. |
| Level 3 Communications, LLC | Level 3 Communications Inc. | Current Rothschild client on matters unrelated to Inner City Media Corporation. |
| NYC Department of Finance; | New York State Department of | Separate client pitches by |

| Inner City Media Corporation<br>Source: Interested Party List 9/2/2011 | | |
|---|---|---|
| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
| Commissioner of Taxation and Finance of the State of New York; NYS Corporation Tax; State of NY; City of NY; NYS Employment Taxes; NYS Sales Tax Processing; NYC Localities: Commissioner of Taxation; | Transportation; New York State Division of the Budget; State of New York (Governor's Office) | Rothschild to the New York State Department of Transportation and the State of New York (Governor's Office) on matters unrelated to Inner City Media Corporation.<br><br>The New York State Division of the Budget is a former Rothschild client. |
| PG&E | Pacific Gas & Electric Company | Former Rothschild client on matters unrelated to Inner City Media Corporation. Rothschild employee currently serving as a Board Member of Pacific Gas & Electric Company. |
| RREEF Management Company | RREEF America, LLC | Client pitches by Rothschild on matters unrelated to Inner City Media Corporation. |
| Steven Scheiwe | Steven Scheiwe | In matters unrelated to these cases, Rothschild has in the past and may in the future be working with or against companies of which Mr. Scheiwe was or is a director. |
| Sprint | Sprint Corp; Sprint NEXTEL | Current Rothschild client on matters unrelated to Inner City Media Corporation. |
| Verizon; Verizon Business; Verizon Wireless; Verizon Communications | Verizon; Verizon Wireless; Verizon Communications | Client pitches by Rothschild on matters unrelated to Inner City Media Corporation. |

Rothschild has limited its search to the Parties in Interest provided by Inner City Media Corporation. Affiliates, subsidiaries or parent companies of Parties In Interest have not been searched unless specifically noted.